## PERRIN *vs.* THE NEW YORK CENTRAL RAIL ROAD COMPANY.

Where the owner of a tract of land lying in a city, caused the same to be plotted out and subdivided into lots, and a map thereof to be made, and filed and recorded in the county clerk's office, on which was an open space, bounded on three sides by said lots, and on one side opening into a public street or highway, such open space being laid down and designated on said map as "park;" and the owner subsequently sold and conveyed to different persons all the lots abutting on said open space, describing them by their numbers and by reference to said map; *Held* that the owner, when he laid out and poltted his tract of land, intended the open space to be a *park*, and not a mere *street* or *passage way* leading by and to the adjoining lots; and that the conveyances of those lots, executed by him, in which the lots were bounded on said "park," did not carry the grantees to the centre of the open space or park, but only to the exterior lines thereof.

THIS was an action to recover the possession of land in the city of Rochester. The land sought to be recovered is that designated "park" on the maps annexed to the printed case. The defendant, by its answer, claimed that the prem-ises in controversy had, upon a certain map made by the plaintiff, in 1848, of a tract owned by him, been designated as a street, park or open piece of ground, appurtenant to certain lots laid down on that map; and that the said street, park or open space of ground became and was fully dedicated by the plaintiff as a street or highway, for the use and benefit of the adjoining lots, and as appurtenant thereto,

VOL. XL.                    5

and for the exclusive use and benefit thereof. That all the lots adjoining said street or park were sold by the plaintiff by reference to the said map,(*a*) and were now held and owned by the defendant; and that the plaintiff, in and by such dedication and sale, had parted with all his title to, and interest in, the lands sought to be recovered.

The action was tried at the Monroe circuit, in February, 1862, before Justice JOHNSON, without a jury. The following facts were proved, or admitted, on the trial. In 1849 the plaintiff was the owner in fee and in possession of a tract of land called the Frankfort tract, in the city of Rochester, of which the premises in controversy were a part. In that year the plaintiff caused said tract to be plotted out and subdivided into 36 lots, and a piece designated "park,"

(*a*) The following diagram, condensed from the map, will give some idea of the situation of the *locus in quo*.

Perrin *v.* New York Central Rail Road Company.

bounded, on three sides, by nine of the said lots, numbered 19, 20, 21, 22, 24, 25, 26, 27 and 28, and on the fourth side (the east) by a public street known as Jones street; and he caused a map of said plot and subdivision to be made for him by James M. Bruff, and filed and recorded in the Monroe county clerk's office.   The land represented on the said map as "park" is the same parcel of land particularly described in the complaint.   The plaintiff subsequently sold and conveyed all the said nine lots abutting on the said "park," at different times and to different persons, describing them, in every conveyance, by their numbers, and by a reference to the said map filed and recorded as aforesaid.   In 1855 the defendant, under such conveyances from the plaintiff and his grantees, acquired the title to, and now owns and occupies, all of said nine lots abutting on the "park."   The description in one of the said conveyances from the plaintiff, was as follows: "All that piece or parcel of land situate in the second ward of the city of Rochester, being lots numbers 19, 20, 21 and 22, said lots known and distinguished on D. Perrin's map of a subdivision of a part of the Frankfort tract in said city, made by James M. Bruff, surveyor, and recorded in Monroe county clerk's office, in liber 83 of deeds, at page 215."   In each of the other conveyances the description was the same, the numbers of lots only being changed. There is no means of access, by any public street or private way, to any of said nine lots last named, other than lots 24 and 28, except through the said piece called "park," and the rail road track shown on a map marked B. which runs out to the public streets of the city.   After the sale of lots 20 and 26 by the plaintiff, dwelling houses were erected thereon, and the piece called "park" was used as the only way of access thereto so long as the dwelling houses remained thereon. They so remained until 1855, when the defendant took possession and removed the same.   The piece of land in controversy is now used by the defendant for ingress and egress in respect to the lots so occupied by the defendant, and for

other purposes. The defendant has constructed two rail road tracks, running north and south, across and on the piece in dispute, and uses and occupies the same for other purposes; and was, at the commencement of this action, and still is in the possession of the whole of the premises described in the complaint, claiming to be the exclusive and absolute owner thereof.

The court found the above facts, substantially, and also that the space called "park" was designed by the plaintiff as a park for the use of the persons who should purchase and own the lots fronting upon and bounded by the same, and also as a street or way of ingress and egress for said persons, with their carriages and teams, and other persons having occasion to go to and upon said lots, but not for the use of the public generally, otherwise; and that it was dedicated by the plaintiff for those purposes. And the judge found and decided as matter of law that the defendant was the owner of the said space or "park," and was entitled to the possession thereof. Judgment was ordered, in its favor, accordingly, and the plaintiff appealed to the general term.

*F. A. Whittlesey,* for the appellant.

*T. R. Strong,* for the respondent.

*By the Court,* WELLES, J. The question to be determined in this case is, whether, when the plaintiff conveyed the lots abutting on the premises in question, he parted with his title to such premises; and that depends upon the question whether those premises can properly be regarded as a street. If it was designed by the plaintiff as a street, lane, alley or way for ingress and egress in order to afford communication between the lots abutting upon it and Jones street, which was one of the public streets of the city of Rochester, the law is settled that the conveyance of those lots by the plaintiff carried the grantees to the middle or centre of the

Perrin *v.* New York Central Rail Road Company

piece of ground in question. It was never doubted that in regard to public highways in the country, such was the rule. In the case of *Bissell* v. *these defendants*, (23 *N. Y. Rep.* 61,) it was decided that the same rule applied to streets in a city. The same rule applies also to a river, creek, ditch, wall, or any similar object, when given as a boundary. The grant is regarded as extending to a line running through the centre of the river, creek, &c. unless an intention to the contrary appears upon the face of the instrument. In the present case, the map made and recorded by the plaintiff constituted a part of the description of the premises in the conveyances of the lots abutting upon the piece of land in controversy ; and if it cannot be collected from the deeds in connection with the map that the plaintiff designed the space indicated on the map as a "park," for a street or passage way merely, the rule referred to will not apply, and the grants will only extend. to the exterior lines of the park adjoining the lots conveyed.

After a good deal of hesitation, I have come to the conclusion that when the plaintiff laid out and plotted his tract, which includes the premises in question, he intended that space of land to be, what he has designated it, on the map, a park, and not a mere passage way leading by and to the adjoining lots ; at least that such was his primary and leading object, and that when he afterwards conveyed the adjoining lots, the presumption is that his intention was the same. I admit that a part of his design was to afford access to the contiguous lots ; but that, it seems to me, was subordinate and incidental to the principal and leading object. He had the unquestionable right to devote it to such lawful purposes and uses as he chose. He declares, in substance, that he designed it as a "park." No definition of that word will describe a street or passage way. One of Webster's definitions of the word "park" is, "an enclosed place in cities, for exercise or amusement." His other definitions of the same word are inapplicable. It is the usual,

and so far as I know, the universal practice, when the idea of a street, alley or lane is intended in the description of the premises in a conveyance, for the grantor to employ those words. But here, the word used fails entirely to convey any such idea. These premises are in no sense a public street, as there is but one entrance, which is at its intersection with Jones street at the east end, and does not terminate at the west end, or communicate elsewhere with any other street or other passage way. It is what is called a *cul de sac,* like Jauncey Court which leads from Wall street in the city of New York. I cannot believe it was intended for a mere lane or alley for passage, although that is possible. I conclude that was not, in fact, the intention, for the reason that the plaintiff has nowhere so expressed it, but on the contrary, has expressed an entirely different intention. He has declared it to be a park, and has omitted to give it any other designation. It is much wider than we would naturally suppose he would dedicate for the mere purpose of a lane or alley. It is wider than any of the lots laid down on the map. I admit the size or width is of little or no importance in determining whether it was designed for what the plaintiff declared it — a park ; but in examining whether it was intended as a mere passage the fact of its unusual width for such purpose has a legitimate bearing on the question. Suppose it had been a piece of ground ten rods square, I apprehend no one would contend that the plaintiff's title would pass by a grant of the adjoining lots ; and yet every consideration in favor of the application of the rule before stated would apply to the case supposed. We know that in our cities, parks are public and private, large and small. The size has almost nothing to do with the question whether a park or not. There are parks in the city of New York much smaller than the one in question ; for example, those in Park avenue.

We are to inquire for the plaintiff's intention at the time of the allotment of his tract. It is said that this was not a

Perrin *v.* New York Central Rail Road Company.

park because not enclosed. Nothing was enclosed at the time of the allotment, and the question is, did the plaintiff intend to enclose it, if that was essential to make it a park?

If it was essential, we should intend that his purpose was that it should in due time be enclosed. There is another consideration equally potent with any of those stated. Suppose the plaintiff, after he had made the allotment and recorded the map, had conveyed lot number 24 by the same description as used in the description of those which he did convey, as stated in the case. That lot is bounded on the east by Jones street, and on the south by the premises in question. According to the theory of the defense the grantee would take to the centre of the premises. And suppose the plaintiff, at the same time or afterwards, should convey lot number 28, lying opposite number 24 and bounded on the east by Jones street, by a similar description except the number; by the same theory, the grantee in the last conveyance would take to the same centre on the south side; so that all the other lots bounding on the premises in question would become completely shut out from any public street or highway. This, it seems to me, could never have been the intention, and cannot be the operation of the conveyances of the lots adjacent to the premises in question.

I have been somewhat embarrassed in the foregoing views by the case of *Bissell* v. *these defendants,* (*supra.*) I think, however, this case can be fairly distinguished from that. In the Bissell case the premises sought to be recovered were represented and designated on the map as Erie street, and as running through from Kent to Jones street. Mumford, under whom the plaintiff claimed, sold his lots adjoining the piece designated on the map as Erie street, by the numbers and sections according to the allotment and survey of the whole tract. The court of appeals held that Mumford's grantees were estopped from denying that the piece of land in question was a street. That as it was named on the map and represented thereon as a street communicating or open-

ing at both ends into public streets in the city of Rochester, and as the adjoining lots were conveyed as bounding on it as sold as a street, Mumford and his grantees were not at liberty to set up and allege that it was not a street. There is no similar estoppel in the present case.

If the foregoing conclusions are correct, the judgment should be reversed and a new trial ordered, with costs to abide the event.

                                             Ordered accordingly.

[MONROE GENERAL TERM, September 7, 1863. *Welles, Johnson* and *J. C. Smith,* Justices.]