IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW JERSEY,

## AT FEBRUARY TERM, 1868.

---

THE TRUSTEES OF THE METHODIST EPISCOPAL CHURCH OF HOBOKEN v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF HOBOKEN.

1. It is of the essence of a dedication to public uses, that it shall be for the use of the public at large; there can be no dedication, properly speaking, to private uses.
2. When the right of the public to the use of lands rests upon no other foundation than a dedication to public uses, the easement vests in the public; the fee remains in the original owner and may be conveyed by him to third persons, but the right of the public to the use is paramount to the title of the owner of the fee, and does not require the fee for its protection.
3. The local corporate authorities of the city or town in which the lands dedicated are situate, have power to regulate their public use, and may be regarded as representatives of the public for the purpose of maintaining suits for the vindication of the public right; but such power is vested in them only as representatives of the public, and for the protection and regulation of the public use; they cannot sell the lands so dedicated, nor release or extinguish the uses for which they were dedicated; nor employ them in any way variant from the purposes for which they were designed.

4.  After a dedication once completed, the owner of the fee cannot author-
    ize the use of the lands for any private purpose.

5.  The owner may, in the act of dedication, declare the specific public
    use to which he intended the donation, and it will remain subject to
    such specific use; but when the dedication is completed, the owner
    cannot thereafter revoke it, or restrict or change the uses to which it
    was made.

6.  Where the question is, whether the way dedicated has become a pub-
    lic highway, so as to impose upon the public authorities the duty to
    amend or repair, an acceptance on their part is essential to that end.
    And where the question is, whether a dedication has, in fact, been
    made, evidence of non-acceptance by the public authorities, or non-
    user by the public, is competent evidence to be considered by the jury
    in determining whether a dedication has been made.

7.  But an acceptance by the public authorities, or public user, is not
    essential to conclude the owner from his power of retraction, when
    his intention to permanently abandon his property and dedicate it to
    public uses, is once unequivocally manifested. In that event, the
    right of the public to appropriate the lands to the public use, at any
    future time when their wants or convenience require it, immediately
    attaches.

8.  When the owner of lands procures them to be laid off in blocks,
    streets, and squares, and has a map made, on which are delineated
    such streets and squares, which he files among the public records
    of the county, and by reference to which he makes sales of lots, the
    streets and squares, as laid down on such map, become thereby dedi-
    cated to public use.

9.  The word "square," as a term of dedication, indicates a public use,
    either for purposes of a free passage, or to be ornamented for grounds
    of pleasure, amusement, recreation, or health.

In ejectment.    On motion for a new trial.

In 1784, Col. John Stevens became, by purchase from
Cornelius Harring, agent for the sale of forfeited estates, the
owner of a tract of land containing five hundred and sixty-
four acres, then in the township of Bergen, in the county of
Bergen, upon which the city of Hoboken has since been
built.    Having in view the projection of a city on this tract
of land, Col. Stevens procured the making of a map by one
Charles Loss.    This map was made in 1804, and was filed
in the clerk's office of the county of Bergen on the 8th of
April, 1805.    A certificate of filing, signed by the clerk of

the county, is endorsed on the map, and it was pasted in one of the books of records of the county. Upon this map the whole tract is laid out in streets and lots, except four squares, which are colored green. The first of these squares is marked on the map Marpel Square; the second, Hudson Square; the third, Church Ground; and the fourth, which includes the premises in controversy, is marked simply Square. Subsequent to the making of this map, deeds of conveyance were made by Col. Stevens and those who succeeded to his title, referring directly to the map.

When the map was made, the premises were in the township of Bergen. On the 28th of March, 1855, the city of Hoboken was incorporated, and the Stevens tract comprised the greater part of the territory included within the boundaries of the city. On the 21st of February, 1838, the Hoboken Land Improvement Company was incorporated; and on the 6th of May, 1839, Col. John Stevens then being dead, his widow and heirs-at-law conveyed the said tract of land to the Hoboken Land Improvement Company, by the same description as is contained in the deed from Cornelius Harring to Col. John Stevens, excepting thereout such lots as had been previously conveyed. The Hoboken Land Improvement Company, by a deed of conveyance, bearing date on the 1st day of October, 1846, conveyed to the defendants a portion of the premises marked on the Loss map "square," for the purposes of a Methodist church; and, by a subsequent deed of release, dated on the 10th day of May, 1848, released the condition annexed to the first conveyance. The defendants erected on the said lot a church for religious worship, which was completed in 1850–51, and continued to occupy it for that purpose without any objection on the part of the public authorities until 1855 or 1856, when a notice to remove from the square was served upon them, and possession was demanded on behalf of the city authorities, in pursuance of a resolution of the common council of the city, adopted May 14th, 1855. In March, 1864, an action of ejectment was commenced in the name of the Mayor and

Common Council of the city of Hoboken against the defend-ants, to recover the possession of the premises described in their deed. At the trial in the Hudson Circuit, the jury found a verdict for the plaintiffs, and a rule to show cause why a new trial should not be granted was subsequently allowed.

Argued at November Term, 1867, before the Chief Jus-tice, and Justices Vredenburgh, Woodhull, and Depue.

For the rule, *Lyon* and *I. W. Scudder*.

Contra, *Leon Abbett*.

The opinion of the court was delivered by

Depue, J.   This ejectment is brought to recover the pos-session of a lot of land embraced in a deed to the defendants, made by the Hoboken Land Improvement Company, on the 1st day of October, 1846.

The plaintiffs claim under a dedication of the whole plot, of which the premises in question are a part, marked on the Loss map as square, to public uses, alleged to have been made by Col. John Stevens in his lifetime.

The defendants make title under a deed of conveyance made to them by the Hoboken Land Improvement Company, who were, at the time of the conveyance, the owners of the fee.   This deed conveyed the *locus in quo* for the purposes of a Methodist church.   By a deed of release, made on the 10th of May, 1848, the grantors released and discharged to the defendants the conditions annexed to the first convey-ance, and they thereupon became the absolute owners of whatever estate the Hoboken Land Improvement Company had then in the premises.   But on the assumption that there has been a valid dedication, the entire square had been dedi-cated to public use long before this conveyance, and as the owner in fee could not set up his original title against the corporate authorities as a defence in ejectment, neither can

the defendants as his grantees. *Den* v. *Dummer, Spencer* 86. If there was a dedication in the legal sense of that term, it derived its efficacy from the map of 1804, and its adoption and recognition by conveyances which had been made to third persons, in accordance with the map, before the date of the defendants' deed. The word "square," on this plot of ground, indicated a public use, either for purposes of a free passage, or to be ornamented and improved for grounds of pleasure, amusement, recreation, or health. That is the proper and natural meaning of the term, and its ordinary and usual signification. It is unquestionably true, that the owner might, in the act of dedication, have declared the special public use to which he intended to donate the lands, and they would have remained subject to such uses. In this case he has not done it. There was nothing to indicate such special use in the original map. The word "square," as a term of dedication, imported a complete and unrestricted abandonment to the public uses above indicated. When the dedication was once complete, the owner could not thereafter revoke it, or restrict or change the uses to which it was made.

The manner in which this case was submitted to the jury enabled them to pass upon the question, whether the dedication was for a public square, and they have so found. To my mind, the evidence is perfectly satisfactory, that the dedication, if any was made, was for that public use.

But if it be conceded that the dedication, though for a public use, was specifically for pious or charitable purposes, it will not avail the defendants. Cases are to be found in the books in which gifts or devises to unincorporated religious or charitable associations, which would otherwise fail for the want of a donee or devisee competent to take, have been upheld in chancery or the fee held to be in abeyance until a subsequent incorporation of the society, because the uses for which they were made were charitable or pious uses. *Town of Pawlet* v. *Clark*, 9 *Cranch* 292; *Beatty* v. *Kurtz*, 2 *Peters* 566; *Baptist Church* v. *Witherell*, 3 *Paige* 296–8.

In such cases it will be found that the gift is specific to the particular society, and the principle of dedication is invoked to give effect to an express gift that would otherwise fail, because of the incapacity of the donee to take.

But where the right of the public to the use of lands rests upon no other foundation than a dedication to public uses, the cases uniformly hold that the easement is vested in the public. A dedication to public uses does not require the existence of a corporation to whom it is made, or in whom it—the title—should vest. It may be valid without any specific grantee *in esse* at the time, to whom the fee could be granted. And in this respect it forms an exception to the general rule of transferring or creating an interest in lands, as it may be done without a deed, and without any person competent to accept the grant as grantee. The public is an ever existing grantee, capable of taking a dedication for public uses. *Wash. on Easements* 128.

In fact it is the essence of a dedication to public uses that it shall be for the use of the public at large. There may be a dedication of lands for special uses, but it must be for the benefit of the public, and not for any particular part of it. *Wash. on Easements* 135; *Munson* v. *Hungerford*, 6 *Barb.* 265; *Curtis* v. *Kessler*, 14 *Barb.* 512; *Talmadge* v. *East River Bank*, 26 *N. Y.* 105. There may be a dedication of a way for a limited purpose, as for a foot way, but there cannot be a dedication to a limited part of the public, as to a parish. *Poole* v. *Huskinson*, 11 *M. & W.* 827; *Vestry of Bermondsly* v. *Brown, L. R.* 1 *Eq. Cases* 204.

There can be no dedication, properly speaking, to private uses. A private way cannot be created by dedication. *Wash. on Easements* 129; *Hale* v. *McLeod*, 2 *Metcalf (Ky.)* 98; *Com.* v. *Low*, 3 *Pick.* 413, *per* MORTON, J. In *Com.* v. *Newberry*, 2 *Pick.* 57, Parker, C. J., says: " We do not see how the principle of dedication to the public can be applied to a private way, for the very evidence which would tend to show a dedication would disprove it as a private way." The parties to a dedication are the individual proprietor and the

Trustees of M. E. Church, Hoboken, v. Council of Hoboken.

public at large.    *Angell on Highways*, § 185.    To permit a private individual or corporation to hold the title or regulate or control the mode in which the public use should be exercised, is entirely inconsistent with a public use, owing its origin to a dedication.    A contrary view arises from a misconception of the nature of the public right in lands dedicated.    Nothing passes to the public but the easement; the fee remains in the original owner and may be conveyed by him to third persons, but the right of the public to the use is paramount to the title of the owner of the fee, and does not require the fee for its protection.    *Cincinnati* v. *White*, 6 *Pet.* 431; *New Orleans* v. *The United States*, 10 *Pet.* 663; *Dummer* v. *Jersey City, Spencer* 86.

The respective interests of the parties, as viewed in all the cases, seem to be this: the fee remains in the original proprietor; the easement, or privilege of using it according to the effect of the dedication, is in the whole community or public; the corporation of the city or town in which the square is, have, by virtue of their corporate authority, power to regulate the public use of it, and may be regarded as representatives of the public for the purpose of maintaining suits in equity or at law, for the vindication of the public right.    2 *Smith L. Cases* 240.

But the power of the local corporate authorities is vested in them only as the representatives of the public, and for the protection and regulation of the public use.    They cannot sell the lands so dedicated, nor release or extinguish the uses for which they were dedicated, nor employ them in any way variant from the purposes for which they were designed. But within the limits of the purposes and uses for which the dedication is made, to regulate the use, the authority of the local corporate authorities is unlimited, against which no mere private right can be set up.    *Com.* v. *Alburger*, 1 *Whart.* 469, 485; *Rung* v. *Shoneberger*, 2 *Watts* 23, 25; *Com.* v. *Bowman*, 3 *Barr* 203; *Com.* v. *Rush*, 2 *Harris*, (*Penn.*) 186; *Langley* v. *Gallipolis*, 2 *Ohio State Rep.* 107; *Wash. on Easements* 155–6; 2 *Sm. L. Cases*, 232, 241–2; *Still* v.

*Trustees of Lansingburgh*, 16 *Barb.* 107 ; *Alves* v. *Town of Henderson*, 16 *B. Monroe* 169.

The vestry of a parish cannot sustain a suit to restrain the infringement of a public right of way, except as relators on an information of the attorney-general, even though they are expressly authorized by act of parliament to indict any person stopping a right of way within the parish, and to take such other proceedings for the opening thereof as to them shall seem expedient. *Vestry of Bermondsey* v. *Brown*, *L. R.*, 1 *Eq. Cases* 204.

It should not be overlooked that the title of the defendants is that of absolute owners of the fee. The fact that the premises are at present used for pious purposes, and that all persons, without distinction, are permitted to attend their church as worshipers, does not alter the character of their ownership. Their title, which is all that can be looked at in an action of ejectment, is that of private owners, holding an absolute conveyance in fee. Their deed cannot be regarded as a declaration of the special uses of a dedication previously made, for by such dedication the owner had abandoned all control over the uses to which the lands should be subjected, and the rights of the public had become fixed. In the event of a previous dedication to public uses, the legal aspect of the defendants' title does not differ from that which was unsuccessfully relied on in *Dummer* ads. *Den, Spencer* 86, and in *The City of Cincinnati* v. *White*, 6 *Pet.* 432.

After a dedication the owners of the fee cannot authorize its use for any private purpose. *State* v. *Wilkinson*, 2 *Vermont* 480 ; *Com.* v. *Alburger*, 1 *Wharton* 469. The case of the defendants is in its facts very similar to the case last cited. In that case it was held that Franklin Square, having been dedicated to public uses by William Penn, neither he nor any person succeeding to his title as proprietary could afterwards grant the exclusive use of a part of this square to any person or corporation, and that a subse-

quent grant of a part of the square to a religious corporation for a burying ground was void.

The merits of this controversy must therefore consist in ascertaining whether, previous to the defendants acquiring title, a dedication of the *locus in quo* to public uses had been effected. If at that time there was no dedication consummated and completed, so that the public had an indefeasible right to the use of the premises, the defendants need not invoke in aid of their title any supposed purpose the owners had in view in setting these lands off. Their deed vested in them whatever estate the Hoboken Land Improvement Company had in the premises at the date of their conveyance.

It was insisted on the argument, in the first place, that when the deed to the defendants was delivered, there had been no previous acceptance by the public authorities, or common use of the square as dedicated to public uses, and that a dedication is not completed until an acceptance either by the public or the public authorities. The principle is so stated in the text books and has been adopted in judicial decisions.

In *Holdane* v. *The Trustees of the Village of Cold Spring,* 21 *N. Y.* 474, the court held that in order to preclude the owner of land from revoking a dedication of a highway, however decisively his intention to dedicate be manifested, there must be an acceptance, either by formal act of the public authorities or by common use, under circumstances showing a clear intent to accept and enjoy the easement for the specific purpose of the proposed dedication.

I am unwilling to accord to the owner of the fee a power of retraction as extensive as is asserted in the case just cited. Where the question is whether the way dedicated has become a public highway, so as to impose upon the public authorities a duty to amend or repair, an acceptance on their part is essential to that end. *Holmes* v. *Jersey City.* 1 *Beas.* 299. And where the acts of the owner relied on to establish a dedication are not sufficiently indicative of an intention to donate his property to a public use, to constitute a dedica-

tion, an acceptance by the public authorities or user by the public, acquiesced in by the owner, may be resorted to to aid in arriving at his intention.    But an acceptance by the public authorities or public user, is not essential. to conclude the owner from his power of retraction, when his intention to abandon his property and dedicate it to public uses is once unequivocally manifested.    In that event, the right of the public to appropriate the lands to the public use at any time when their wants or convenience require it, immediately attaches.    In *Mayor of Jersey City* v. *The Morris Canal and Banking Company*, 1 *Beas.* 553, Mr. Justice Whelpley, in delivering the opinion of the Court of Errors, says:    " There is a large class of cases where the acts of dedication by the owner of the fee are of such a character as to preclude the owner from retracting the dedication, even before any act of acceptance on the part of the public.    In such cases the dedication is immediate; it does not wait for the act of acceptance by the public.    Whenever the public, by an express municipal act, accepts the dedication, the public duty of putting the land to the use to which it was dedicated arises, but the acts of dedication may be so unequivocal as to be decisive before that time arrives against all right of the owner in fee to withdraw.    He may be bound, though the public may be free.  .  .  .  .  .  .  .  As the act of . dedication does not of itself throw upon the corporate body the duty of repair, so the simple non-assumption by the corporate body of the duty of repair does not of necessity annul the dedication."    In that case the court decided that a dedication may be designed by the owner to be accepted by the public *in presenti* or *in futuro;* and the case of *Den* v. *Dummer, Spencer* 106, was decided upon the same principles. But where the question is whether a dedication has in fact been made, evidence of non-acceptance by the public authorities or non-user by the public, is competent evidence to be considered by the jury in determining whether a dedication has been made.    In *Barclay* v. *Howell's Lessees*, 10 *Pet.* 506, Mr. Justice McLean says:    " If the dedication of these

Trustees of M. E. Church, Hoboken, v. Council of Hoboken.

streets to the public were a matter of doubt, and a jury were to inquire into the fact, it is admitted that these not having been improved or used as streets, would be a circumstance which the jury must weigh against the proof of dedication. But it would clearly be error for the court to instruct the jury that unless the ground claimed for these streets was in a situation to be used as streets, and had been so used, there could be no dedication. . . . . . . . . . . . .
Whilst the Circuit Court might have called the attention of the jury to the fact that the ground in controversy never having been used as a street, was a circumstance which they ought to weigh against the dedication contended for, it was error in them to say, in substance, there could be no right without the use. This withdrew from the jury the main point of inquiry by substituting another, the existence or non-existence of which was not inconsistent with the principal fact. It was not essential for the city to show that the entire strip of land referred to had been used as a street, but it was essential to establish that it had been dedicated as such."

The evidence relied on to establish a dedication in this case was the Loss map, made in 1804, by the direction of Col. John Stevens, and its recognition and adoption by the owners of the fee in conveyances to third persons. On this map these lands were all laid out in streets and lots of twenty-five feet frontage, except the four squares, which were colored green, and the plot of ground now in question was marked on the map "*square.*" This map was filed in the clerk's office of the county of Bergen, on the 8th of April, 1805. The certificate of the clerk of the county of its being filed, is endorsed on it, and the map was pasted in one of the books of records of the county. On the 10th of April, 1805, Col. John Stevens conveyed to one Peter Crughton lots No's 75,. 76, and 77, as distinguished on that map, and in the deed, referred to the Loss map as having been recorded in the clerk's office of the county of Bergen. In 1837, Edwin A. Stevens, who then was the owner of the whole tract, conveyed to one Benson lot No. 86, by reference to the same

map. And in 1841 and 1843, five several deeds of convey-ance were made by the Hoboken Land Improvement Company, the then owners of the original tract, for lots distinguished on this map. It further appears, by the testimony of William W. Shippen, the agent of the land improvement company; that in all the deeds made by the company, reference was made to the Loss map, and that before 1846, the date of the defendants' deed, the whole block on Garden street, fronting on this square, had been sold. And in the deed to the defendants, under which they defend this suit, the premises in question are described as " part of a tract of land known by the name of Hoboken, and which, on a map of said tract, made by Charles Loss, and filed in the clerk's office of the county of Bergen, is distinguished by the word ' square.' "

In 1804, when this map was made, the whole tract was a city, only, on paper. In 1822, the greater part of it was used as farm land ; very few streets were then opened. The square was then part of a field of twenty-five acres, and there was a pond of water on it covering an acre of ground. In 1834, it is described as a cow pasture. In 1837, a dispute arose about cutting ice on the pond, in which, however, the Messrs. Stevens were not engaged. In 1841, a person who was planting trees for the company was directed by them not to plant trees there, as it was a square. About the same time the company moved a small house on the square, which was used as a place of worship by the Baptists and Methodists. Mrs. Board says, that " in 1846, the place was small, not extending above Third street, and nobody thought of opening those squares. The square had no distinctive character independent of the map." It was a low, marshy place when the defendants' church was built. This comprises the whole history of the square, prior to the time the defendants acquired title.

In 1846, the place had a population of three hundred or four hundred inhabitants. In 1855, the city was incorporated, and in 1865, its population was thirteen thousand.

Trustees of M. E. Church, Hoboken, v. Council of Hoboken.

There is no satisfactory evidence of any common use of this square by the public from 1804 to 1846, because, probably, the demands of the public did not require it. But during all that period there was a continuous recognition by the owners of the Loss map, as the plan upon which the city was being built, in the conveyances of lots to purchasers, some of which fronted on this square. These repeated recognitions of this map, and long acquiescence by the owners in the plan there delineated, indicate an intention to permanently abandon and dedicate the streets and squares to public use. Where a proprietor of real estate sells and conveys lots in conformity to the city map, on which the property of such proprietor is laid out into blocks, streets, avenues, and squares, such recognition of the plan—laying out his grounds into streets, &c.— is a dedication of the streets to a public use. *Wyman* v. *The Mayor of New York*, 11 *Wend.* 487.

It may be stated, as a general rule, that where the owner of urban property, who has laid it off into lots, with streets, avenues, and alleys intersecting the same, sells his lots with reference to a plat in which the same is so laid off, or where, there being a city map on which this land is so laid off, he adopts such maps by a reference thereto, his acts will amount to a dedication of the designed streets, avenues, and alleys to the public. *Angell on Highways*, § 149. The same principle is applicable to urban lands to be used as an open square. *Trustees of Watertown* v. *Cowan*, 4 *Paige* 510; *City of Cincinnati* v. *White's Lessees*, 6 *Pet.* 431; *New Orleans* v. *United States*, 10 *Pet.* 718; *Perrin* v. *N. Y. Central R. R. Co.*, 40 *Barb.* 65; *Abbott* v. *Mills*, 6 *Vermont* 521; *Dummer* ads. *Jersey City, Spencer* 86; *Indianapolis* v. *Croes*, 7 *Ind.* 9; *City of Logansport* v. *Dunn*, 8 *Ind.* 378; *Rowan's Ex'rs* v. *Town of Portland*, 8 *B. Monroe* 235; *Alves* v. *Town of Henderson*, 16 *B. Monroe* 168; *Com.* v. *Rush*, 14 *Penn.* (2 *Harris*) 186; *Vick* v. *Mayor of Vicksburg*, 1 *How.* (*Miss.*) 186; *Brown* v. *Manning*, 6 *Ohio* 129.

The cases on this subject are mostly collected in the

American notes to *Doraston* v. *Payne*, 2 *Sm. L. Cases* (6th ed.) 240.

The question of dedication, being a question of intention, is, to a great extent, a question of fact for the jury. The case was fairly presented to the jury, and I see no reason for disturbing their verdict.

It was insisted on the argument, that by the sale of the church property, in 1861, for arrears of water rents assessed against the defendants, the public right in the square was defeated. To that it was answered, that the assessments of water taxes were made by the water commissioners—a distinct corporation from the municipal corporation—and that the duties of the city authorities in making sales were merely ministerial. The principle above stated, denying the power of the corporate authorities to sell lands dedicated, or to extinguish the public uses for which they were dedicated, sufficiently disposes of this question.

CITED in *State, Central R. R. Co.*, v. *Elizabeth*, 6 *Vr.* 361; *Hoboken Land & Imp. Co.* v. *Hoboken*, 7 *Vr.* 544; *Clark* v. *City of Elizabeth*, 8 *Vr.* 125; *Wood* v. *Hurd*, 5 *Vr.* 90; *Earle* v. *Mayor of New Brunswick*, 9 *Vr.* 53; *Borough of Chambersburg* v. *Manko*, 10 *Vr.* 498; *Clark* v. *City of Elizabeth*, 11 *Vr.* 174; *Hague* v. *West Hoboken*, 8 *C. E. Gr.* 356; *Paterson, &c., H. R. R. Co.* v. *Mayor, &c.*, 9 *C. E. Gr.* 165; *Inhabitants of Greenwich* v. *E. & A. R. R. Co.*, 9 *C. E. Gr.* 221.