## THE MAYOR AND COMMON COUNCIL OF THE CITY OF BAYONNE v. WILLIAM H. FORD.

R. Graves plotted a tract of land as building lots, selling some of them by reference to such plot; on this plot was a small section marked "Annette Park, now belonging to R. Graves." *Held*, that such section thereof became a public park by dedication.

This was an ejectment, brought by the corporation of Bayonne to recover a certain tract of land alleged to be a public park. These were the facts: Roswell Graves was the owner of a tract of land containing about two hundred acres, at Bergen Point, and which parcel included the premises in question. He had this whole tract marked out on a map into lots and plots, and streets and avenues, and the premises in dispute were indicated on this map thus: "Annette Park, now belonging to R. Graves." This park stood by itself, being separated on all sides from the building lots, by laid-out streets. In the spring or early part of the summer of 1853, Graves sold and conveyed some of the lots laid down upon this map, and afterwards, in June, 1853, filed the map in the office of the clerk of the county of Hudson, and then, in 1859, 1860 and 1864, sold four additional lots, and in these conveyances, for the

purpose of description, this map was referred to. There was also evidence to the effect that Graves, about the time he filed the map, when commending his lots to purchasers, had repeatedly declared that he had dedicated the park to the public.

The evidence on the part of the defence consisted of proof of his title, derived mediately from Graves; of a conversation of Graves, in which he stated that his dedication of the part was on the condition that the purchasers of the lots were to improve it, and that none of them who had bought the lots would contribute anything for that purpose; and some testimony having a tendency to show that the part had been, with the rest of the property, subjected to tax.

The jury was instructed to find a verdict for the plaintiff, and a rule was granted to show cause why there should not be a new trial.

Argued at February Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the motion, *John Linn.*

Contra, *Gilbert Collins.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The direction to the jury, which was given at the trial, to find a verdict for the plaintiff, seemed to me to have been the inevitable result in view of the proofs then before the court. In *Price* v. *Inhabitants of Plainfield,* 11 *Vroom* 608, the Court of Errors, with the intention of establishing a definite rule of law upon the subject, explicitly declared that when a land-owner had caused a map of a part of land to be filed in the county clerk's office, on which streets and building lots were delineated, and one block was set apart and marked with the word "park;" and when such land-owner had subsequently made conveyances of sundry of such lots to various purchasers, such conduct was conclusive evidence of a dedication of the parcel designated "park,"

to public use. As the practice of selling city lots by reference and in conformity to maps of this description is very prevalent in this state, public policy seems to require that the legal consequences of sales under such conditions should be neither uncertain nor obscure; and such beneficial result can be secured only by maintaining that the rule established by the case just cited, is not to be frittered away by frivolous circumstances, or other vague indications of an intention inconsistent with the presumption from the specified acts, of a dedicatory design. The reasonable inference from the existence on a map of this description of a tract marked off as a park or other public improvement, is that such easement is intended to give value to the adjacent lots, and after such inference has been drawn and sales effected on that footing, the burthen should be thrown on the vendor to show, by the clearest proofs, that the inference thus made was unwarranted. In the case in hand, it seems to me that the proof designed for that end is of the slenderest and most inconclusive character. On the map in question the section of land set off as a park has this description, viz.: "Annette Park, now belonging to R. Graves;" and the contention is that this phrase, expressive of ownership, distinguishes this case from that of Price v. Inhabitants of Plainfield. But the terms relied on do not sufficiently express the idea sought to be attributed to them. The assertion of ownership comprised in these words, does not reach to the point of inquiry, which is as to the use which the owner intends to make of the land admittedly owned by him. The phrase denotes a claim of ownership when the proof was made, but it denotes nothing with respect to the purpose to which the premises are to be applied in the future, whether they are to be retained or sold, as dedicated. Even now, Graves, if living, would be the owner of this parcel of land, even though he dedicated it as a park to the public use. The rule to which I have adverted as established by the Court of Errors, would be of no practical avail if it could be turned aside by so feeble a force as is inherent in these expressions. I have said that I think the proof that will overcome the pre-

sumption of dedication arising from the conditions designated, must be of the most cogent character; the present proof falls far below that standard.

And it may be further remarked that if we should put the construction on the phrase thus criticised, that the counsel of the defendant claims, it would not save the case of his client. Such terms, so construed, could have the effect only of preventing the map under the given circumstances from operating, *per se*, as proof of dedication; grant, therefore, that by the filing of the map there was no dedication; still it cannot be denied that Graves, being thus the owner, could, if so minded, subsequently devote this land to the designated use of dedication, and the defendant himself has proved that he made such dedication. It is true that the witness by whom this is proved says that the statement made by Graves was that such dedication was a conditional one—the condition being that the purchasers of the lots should make the park. Here there was a dedication admitted to have been made, and the defence against its existing force is, that it was defeasible on the non-performance of a condition subsequent, which condition has not been complied with. But when was such condition to be performed? There was plainly no time fixed. And by whom was it to be performed? Certainly by the body of purchasers of the lots composing the entire tract. Only a few lots have been sold. Can this small number of purchasers be called on to take upon themselves the burthen of fulfilling this entire condition? But again : the conclusive answer to this defeasance of the case thus made by the defendant against himself, is the fact that there is not a particle of legal proof that any purchaser ever refused to contribute to the performance of such condition. All that we know upon the subject is, that Graves, in the conversation alluded to, stated that they so refused; but the legality of such testimony will hardly be insisted on. Taking the defendant, therefore, at his own word, and laying aside all the other testimony in the case, the result at the trial was right.

Nor have I found anything in the second position taken by

the counsel of the defendant, which can in anywise affect the determination of the present controversy. The position thus alluded to was, that the city authorities of Bayonne, under a general authority to lay out streets and avenues, had run a street over part of the premises in question, and that, in consequence of such act, the dedication was defeated. But the result embraced in this proposition appears to me a plain *non sequitur*. It may well be that with respect to so much of this park as has been comprised in this public road, the defendant, as the owner of the fee, was entitled to some compensation, as his land was applied by the public authorities to a use to which he had not devoted it; but how such an appropriation of a part of the tract could operate as a defeasance of the entire gift to the public, the argument has not informed the court. In the case of *Trustees of the M. E. Church* v. *Council of Hoboken*, 4 *Vroom* 19, it was truly said that when a dedication of this kind obtains, the local corporate authorities take the interest so created in trust as the representatives of the public, and that they cannot sell the lands so dedicated, nor release nor extinguish the uses for which the dedication was made; and the theory, therefore, would be utterly inadmissible, even if the fact were that the corporate authorities of Bayonne had laid out the road in question, that thereby they forfeited rights that belonged not to themselves but to the public at large. In point of fact, the street in question was not laid out by the city of Bayonne, but by special commissioners appointed under a special statute. The action of such officers had no effect in the way of destroying the public rights now in question.

The rule must be discharged.