MUNGO J. CURRIE et al., executors, &c., complainants,

*v.*

MAYOR AND ALDERMEN OF JERSEY CITY AND FACTORY SITE CORPORATION, defendants.

[Submitted March 5th, 1924.   Decided March 26th, 1924.]

1. Where a map is filed showing certain streets delineated thereon, and no conveyance has been made according thereto, this alone is not sufficient to establish a dedication or a tender of dedication of the streets to the city.

2. The owner of land may map and lay it out into streets, avenues and blocks at his own free will, and the public will acquire no interest therein until, by some decisive and irrevocable act, either toward the public or toward a grantee, he renders it improper and unjust to permit him to deny the public use and character of the highway; he is then estopped, but not before.

3. The filing of a map in the county clerk's office was for the convenience of vendors and purchasers.   It might have been filed with a title company, or retained in the maker's possession—the effect would be the same in the law.   (At the time the map was filed there was no provision of law for the filing of the same.)

4. Where resolutions were passed by the city authorities appointing the chief engineer to report the proper grades for some seventy streets in the vicinity of the lands delineated on the map filed, and the engineer reported the grades, and no objections being made, the grades were confirmed, and for almost half a century no grade has been worked nor anything done by the city in the premises, there could be no acceptance by these resolutions, as there was neither dedication nor tender by the owner, and no estoppel could arise.

5. Where city maps were made conforming to the filed map, and taxes assessed thereon, and the property sold for taxes, this. standing alone, *does not show an intent to dedicate.*

6. Where taxes were assessed on the lands according to the map, and the taxes afterwards adjusted by commissioners under the Martin act and the lands were sold to the city under such adjustment, such acts display no donative intent on the part of the owner of the lands, nor do they operate as an estoppel.

7. The city, by the conveyance to it, acquired the fee in the lands fronting on the street; it did not own the easement of way on Princeton avenue, the fee in which was well vested in the complainants. It afterwards sold to the complainants. One of the most important present incidents of a fee-simple is the right of a free and unlimited alienation. It might sell to anyone, including the complainants. placing all purchasers on an even footing. If it could not sell to the complainants on the same terms as it might sell to a stranger, this would be a limitation on the fee. If it sold to a stranger, the easement of way in the street would not pass thereby. *Held,* that under the sale to the complainants, with no agreement on the part of the complainants contained in the deed to the contrary, the complainants took the same title as would have passed to a stranger, and thus the acceptance could not be regarded as a dedication or tender thereof

8. Where complainants conveyed an underground easement to the Passaic valley sewerage commission by reference to the streets on the map, the deeds in each case expressly stating that the map was used for convenience in description, and not with intent to dedicate, does not evidence a dedication.

9. Where a petition was presented to the city praying the vacation of a street, stating that the application was made without prejudice to the right of the petitioner to claim that such streets had not been dedicated to public use, the petition being merely to remove what might be a cloud on the title, does not operate as a dedication.

On bill, &c.

*Mr. Richard Boardman,* for the complainants.

*Mr. Thomas J. Brogan* and *Mr. Frank J. Reardon,* for the mayor and aldermen of Jersey City.

GRIFFIN, V. C.

The bill in this cause is filed to quiet the title to lands lying within the lines of a certain street shown on the city map as Princeton avenue. The city claims that there was a dedication. This the complainants deny. The primary cir-

cumstances tending to show dedication as contended for by the city is this: In 1872 the estate of James Currie made a map and filed the same with the county clerk on April 27th, 1872, on which Princeton avenue is laid down as Avenue E. No conveyances have been made according to this map. In this posture there was neither a dedication nor a tender of dedication to the city. The elementary rule in this situation is stated in *Vannatta* v. *Jones, 42 N. J. Law 561,* where Mr. Justice Magie said: "The owner. of lands may map and lay them out into streets and avenues and blocks at his own free will, and the public will acquire no interest therein until by some decisive and irrevocable act, either toward the public or toward a grantee, he renders it improper and unjust to permit him to deny the public use and character of the highway. He is then estopped, but not before."

To the same effect is *New York and Long Branch Railroad Co.* v. *South Amboy, 57 N. J. Law 252, 258,* cited with approval in *Keyport* v. *Freehold, &c., Railroad Co., 74 N. J. Law 480, 482; 2 Dill. Mun. Corp. (3d ed.) 638, § 640.*

It is quite likely that when the executors made and filed this map (and their authority is not questioned) they were then minded to sell according thereto, as then being the best plan to carry out their trust in disposing of the property.

At the time this map was filed, there was no provision in the law therefor. It might have been filed with a title company or retained in the makers' possession, the effect would be the same in law.

The filing in the clerk's office where conveyances were recorded was a mere matter of convenience to the executors in selling and purchasers, in that if the lands were sold by lot and block number, according to the map, without a particular description, the map was readily obtainable to establish the location of the lot conveyed.

The next point the city makes is that on August 30th, 1877, a resolution was passed, under the city charter of 1871 (*P. L. 1871 p. 1094 § 56*), appointing the chief engineer to report the proper grades for some seventy streets in the

vicinity of Princeton avenue (Avenue E); and on October 2d, 1877, the engineer having reported the grades, and no objections having been made, the grades were confirmed, and during the period since elapsed (almost a half a century) no grade has been worked, nor did the city turn over a spade of earth on the premises. My view on this point is that, as there was neither a dedication nor a tender of dedication by the owner, there could be no acceptance by these resolutions, and, as the city has never done anything in furtherance of the resolutions, no estoppel could arise.

The next point made is that city maps were made conforming to the filed map, and the Martin act commissioners made maps conforming to the filed map, under which the property was sold for taxes. It does not appear in this case that the complainants paid any taxes according to the map prior to 1875, and, even if they had, I would not regard this, standing alone, as an intent to dedicate. I find no cases in this state on the subject, but a number of cases from other states appear in *Ell. Roads, &c. (3d ed.), 213 § 185.* In *City of Ottawa* v. *Yentzer, 160 Ill. 509; 43 N. E. Rep. 601, 604,* the supreme court of Illinois cites an earlier edition of *Ell. Roads, &c.* (which is now § *185, supra*), to this effect:

"The payment of taxes assessed by the local authorities is evidence tending to defeat the presumption of a dedication. It is, however, under most circumstances, a matter of but small probative force, and if the land is, in fact, dedicated to the public for a highway, the fact that it has been taxed will not prevent the public from claiming the use of such land for a public road."

To substantially the same effect is *Town of Lake View* v. *Le Bahm, 120 Ill. 92; 9 N. E. Rep. 269, 273.*

In *Poole* v. *City of Lake Forest, 238 Ill. 305; 87 N. E. Rep. 320,* the court said: "The law does not demand the forfeiture of title simply because the owner of property does not cause it to be listed for taxation. The utmost that can be claimed by appellant from this circumstance is that the failure of the public authorities and the owner to have the premises listed and taxed is an evidentiary fact tending to prove that the premises were regarded as public property.

This fact, while entitled to consideration and due weight, is not conclusive upon the owner."

The general rule deducible from these authorities seems to place the municipality and the owner upon an equal footing on the question of the assessment and the payment of taxes on lands claimed to be dedicated, on the one hand, and the failure to assess and the consequent non-payment of taxes upon lands against which a similar claim is asserted, on the other. And in either case such payment or non-assessment and non-payment, as the case may be, is some evidence for or against the fact of dedication, but is not conclusive.

Coming to the next claim of the city, the taxes assessed against the lots fronting on Princeton avenue, being unpaid from 1875 to 1892, were adjusted by the commissioners of adjustment under the Martin act, and were sold to the city by the city collector in 1899. In view of what has been said, the action of the Martin act commissioners in making their map and adjusting the taxes according thereto, and the sale by the city collector to the city according to the same description, displayed no donative intent on the part of the complainants, nor did it operate as an estoppel against them.

The last and most serious point is that, after the city acquired title, it conveyed to the complainants according to the map showing Princton avenue delineated thereon. My first thought was that, by accepting this conveyance, an estoppel might possibly have arisen against the complainants to deny the existence of the street. But, upon analyzing the situation, this position arises: The city owned the fee in lands fronting on the street. It did not own the easement of way in Princeton avenue, the fee in which was well vested in the complainants.

One of the most important present incidents to a fee-simple is the right of free and unlimited alienation. *Washb. Real Prop.*, § 141 (*6th ed.*). I have not overlooked the fact that there may be a restraint which is limited or partial. *Feit* v. *Richards*, 64 N. J. Eq. 16, 20. But in this case the city took an unlimited fee without any restraint on aliena-

tion. It therefore could convey at any time to anyone, including the complainants, the title to the lands which it had acquired, which, as above pointed out, did not include the easement in Princeton avenue. And in making the conveyance, the grantee, whether it happened to be the complainants or someone else, would acquire the same identical estate and right, title and interest in the lands so conveyed. If sold to the complainants it would no more operate to dedicate the street than if sold to a stranger; otherwise, the conveyance to the city would not possess the attributes of a fee, because thereby it would be excluded from selling to the complainants on the same terms as to a stranger.

Therefore, the mere acceptance of a deed from the city containing no agreement on the part of complainants to the contrary, did not operate as an estoppel against complainants denying that Princeton avenue was thereby dedicated to public use.

None of the facts appearing in this case, to my mind, show a donative intent on the part of the complainants, nor anything from which an estoppel may arise.

In *Green* v. *Chelsea, 24 Pick. 71, 80,* the supreme judicial court of Massachusetts said: "Dedication must originate in the voluntary donation of the owner of the land and be completed by the acceptance of the public."

In closing, I may add that the city also asserts that, by reason of the complainants describing a certain underground easement recently conveyed to the Passaic valley sewerage commission by reference to the streets on the map, this showed a donative intent. This is clearly not so, for the complainants in the very grant declared in substance that the reference to the streets was made for convenience in description and not with intent to dedicate.

And the same may also be said as to the petition presented by the Factory Site Corporation assented to by one of complainants, which prayed the vacation of several streets, including Princeton avenue, but in said petition it is stated that the application was made without prejudice to the right

of the petitioner to claim that such streets had not been dedicated to public use. This petition was merely filed to remove what might be a cloud on the title.

The decree will be for the complainants.