DODGE & BLISS COMPANY, a corporation, complainant-respondent,

*v.*

THE MAYOR AND ALDERMEN OF JERSEY CITY, a municipal corporation, and PUBLIC SERVICE ELECTRIC AND GAS COMPANY, a corporation, defendants-appellants.

[Submitted May term, 1929—Decided February 3d, 1930.]

*Mr. Herbert Clark Gilson,* for the complainant-respondent.

*Mr. Thomas J. Brogan* and *Mr. Charles A. Rooney,* for the mayor and aldermen of Jersey City.

*Mr. William H. Speer* and *Mr. Leland Taliaferro,* for Public Service Electric and Gas Company.

The opinion of the court was delivered by

CASE, J.

Dodge & Bliss Company filed a bill to quiet title, seeking by that means to obtain judicial determination that the

city of Jersey City and the public generally had no street easements in certain ways delineated on maps but which the complainant insisted had never been dedicated as streets or public ways, and which, as the complainant insists, are not such. After the matter was at issue and the hearing begun, Public Service Electric and Gas Company was brought in as a defendant. The contention as raised by the bill of complaint extended to all so-called streets within the outside boundaries of complainant's lands, including Van Keuren avenue, James avenue (formerly Sixth street), Westside avenue (formerly Fourth street), part of Duffield avenue (formerly Ninth street), and other streets. By stipulation, however, according to the statement in the briefs, the controversy is reduced to the consideration of Van Keuren avenue which runs from Westside avenue in a westerly direction longitudinally through the lands of the complainant to Duffield avenue and the lands of defendant Public Service Electric and Gas Company.

Daniel Toffey and George C. Toffey were the owners of a tract of land containing twenty-three and one-eighth acres lying between the Hackensack river and the Paterson and Hudson River Railroad Company on the west and east, respectively, and between lands of Van Reypen on the south and lands of O'Brien (formerly Romaine) on the north. This tract embraced the entire site of the present dispute. On May 1st, 1869, they mortgaged that land to Cornelius C. Van Reypen. Soon thereafter title passed to William Van Keuren and William H. Batty. While the mortgage was still an underlying lien, these men conveyed to one Stephen Morgan by deed dated January 5th, 1870, and in the deed conveyed the above-mentioned land as the first tract and three other lots as a second tract in trust to the end that on a written request signed by William H. Bumsted, William Keeney, Charles Schultz and William Batty, or any three of them, the trustee would convey in fee-simple by proper deeds for that purpose either or both of the parcels, apply the proceeds to the payment of creditors, pay to said Bumsted, Keeney and Schultz any surplus from the sale of the

first tract, and pay to said William Van Keuren and William H. Batty any surplus from the sale of the second tract. On December 13th, 1870, there was filed in the clerk's office of Hudson county a map of lands embracing the first tract and certain lands of Van Reypen adjacent thereto entitled "Map of property belonging to Stephen Morgan and J. V. H. Van Reypen in the 10th Ward of Jersey City, Jan'y 1870, E. W. Post, City Surveyor." That map laid out the land in building lots and showed all the streets hereinabove mentioned. Sometime later there was a further map, entitled "Map of the 9th, 10th, 11th, 12th Wards of Jersey City, formerly City of Hudson, made for the Mayor and Aldermen of Jersey City, 1871, made by Levi W. Post, City Surveyor," listed in the court house as a filed map and placed in the files of the custodian of maps of Jersey City. The custodian of maps of Jersey City, from whose custody this map was produced, testified that it was his understanding that it was made and used for assessment purposes.

Stephen Morgan, trustee, made conveyances from the 1870 map. He conveyed to Charles Schultz a parcel of land in the vicinity of that now owned by the Public Service Electric and Gas Company. He conveyed to Bumsted, Keeney and Van Keuren the balance of the tract, excepting therefrom the conveyance to Schultz. The deed to Schultz conveyed by reference to the 1870 map, and the deed to Bumsted, Keeney and Van Keuren, in excepting those lands, used the same description. Bumsted, Keeney and Van Keuren made two conveyances in 1871 and 1872, respectively, to the New Jersey Midland Railway Company. In the first instrument they described with the data of the 1870 map; in the second they not only used the data but specifically named the map; and in both instances they followed street lines, Van Keuren avenue, Catherine street, &c., as shown thereon. The same grantors conveyed, in 1872, by strict reference to the 1870 map, lots 55 and 56 in block A along Van Keuren avenue to one Halladay, and by an earlier deed, in 1871, conveyed (see a more detailed reference *infra*) to Halladay twenty lots, facing on Van Keuren avenue, numbered 57 to 76,

inclusive, in block A, all by strict reference to the same map. The last mentioned conveyance is a link in the direct chain of title of the complainant company to that portion of its present holdings.

On April 18th, 1879, under the direction of a decree in chancery in a suit to foreclose the mortgage Toffey et al. to Van Reypen, mentioned above, William P. Douglass, master in chancery, conveyed to Daniel Toffey and Edward M. Wilson three parcels of land, of which the first parcel is the entire tract of twenty-three and one-eighth acres with six exceptions, and the second and third parcels are the plots excluded from the first parcel by the first and fourth exceptions, respectively. The description of the first parcel in setting off the excepted plots refers specifically to the 1870 map, and to several of the streets, including Van Keuren avenue, thereon shown. The descriptions in the second and third parcels are specifically based upon and taken from the 1870 map.

Contemporaneously with the conveyance last mentioned the grantees therein, Daniel Toffey et al., executed a new mortgage, on the lands so acquired, to Cornelius C. Van Reypen. The mortgage, by its terms, covers the same premises acquired by the master's deed and the description is substantially the same. In time this mortgage, also, was foreclosed and on September 19th, 1888, Robert Davis, sheriff of Hudson county, under decree in chancery, conveyed the foreclosed premises to Daniel Toffey. The sheriff's deed excepted, as had also the mortgage of which it was an outgrowth, the conveyance made by Bumsted, Keeney and Van Keuren to Halladay for the twenty lots and also the conveyances made to the New Jersey Midland Railway Company. These exceptions were by specific reference to the 1870 map and explicitly named Van Keuren avenue. Toffey, the grantee in the sheriff's deed, conveyed the lands thus acquired to Dodge and Meigs. Halladay conveyed sixteen of his twenty lots to the same grantees. In both instances the former descriptions were preserved. By other and intermediate conveyances practically the entire tract, except the

railroad lands, was reassembled in the complainant. The deed to the complainant for its main tract makes descriptive reference, in conveying the bulk of the land, to the 1870 map and specifically conveys lots 57 to 72, inclusive, by incorporating both the 1870 and the 1871 maps in the decription; and also conveys a third tract by specific reference to the 1870 map. In either the conveyancing or excepting portions of this deed Van Keuren avenue (both center line and side line), Catherine street (both center line and side line), Fourth street, Duffield avenue and James avenue are named and incorporated.

Since acquisition of title and for a number of years past the complainant has declined to recognize the various streets, so-called, as public thoroughfares. In making the conveyance to the Holland Company, which was the holding company for the Public Service Electric and Gas Company, there was a description which did not refer to the maps but which uses what appears to be a new survey, excepting and reserving "all rights the public may have if any in a strip of land sixty feet in width known as Duffield avenue."

The public use has been inconsiderable and somewhat spasmodic; yet there has been such use. In addition there are city water mains and hydrants. The board of commissioners of Jersey City passed an ordinance entitled "An ordinance changing the location of a part of Duffield and Van Keuren avenues in Jersey City, and vacating the same upon the opening and improvement of portions in lieu thereof, which are hereby accepted;" and the body of the ordinance accomplishes the purpose thus stated.

The decree in chancery quieted the title of the complainant to the property found in the bed of Van Keuren avenue and determined that, with the exception of certain rights of Public Service Electric and Gas Company under a conduit agreement, neither of the defendants had any estate, right or interest in the same or any part thereof. From that decree the defendants appeal. They rest their appeal on four points —first, that Van Keuren avenue has been and still remains dedicated to the public use; second, that the complainant

is estopped to maintain this suit or to have a decree by the deeds in its own chain of title; *third,* that the public has acquired the right to use the streets mentioned in the bill of complaint, and *fourth,* by and on behalf of Public Service Electric and Gas Company, that that defendant has received and acquired the right to use Van Keuren avenue. The complainant denies each of these contentions.

Where the owner of urban property, who has laid it off into lots, with streets, avenues and alleys intersecting the same, sells his lots with reference to a plat in which the same is so laid off, or where, there being a city map on which this land is so laid off, he adopts such maps by a reference thereto, his acts will amount to a dedication of the designed streets, avenues and alleys to the public. *Trustees of M. E. Church* v. *Mayor, &c., of Hoboken, 33 N. J. Law 13.* Stephen Morgan made and filed the map of 1870 before conveying any of the property, and when he did convey, it was by deeds that in effect adopted the map. But it is protested that Morgan was a trustee, and that his title is to be compared with that of an executor, who cannot dedicate the lands the title to which is in the devisee or heir-at-law, citing *Paret* v. *Bayonne, 40 N. J. Law 333, 336;* and that, inasmuch as there was an existing mortgage, Morgan could not dedicate any part of the property without the consent of the mortgagee, citing *Kiernan* v. *Jersey City, 80 N. J. Law 273.*

*Paret* v. *Bayonne* is scarcely applicable. It has been held that trustees who are the legal owners of land in fee, and are vested with discretion as to the mode in which the trust may be best subserved, may dedicate the land to public uses not inconsistent with the trust. *Prudden* v. *Lindsley, 29 N. J. Eq. 615.* In the instant case, in order to create funds to pay creditors, Morgan had full authority to sell upon the written request of Wm. H. Bumsted, William Keeney, Charles Schultz and William Batty, or any three of them, and, if and after the creditors were paid, to pay the surplus proceeds to Bumsted, Keeney and Schultz. The written request was made and recorded. The conveyances were actually made to Schultz and to Bumsted, Keeney and

Van Keuren. Thus, among the grantees were those who had full authority to direct conveyance by the trustee as well as all of those who had the remainder interest in the proceeds of sale, and, indeed, one of the two grantors who gave the trust deed. One of these deeds conveyed by specific reference to the 1870 map, and the other, in describing an exception from the conveyance, made like reference. Nor does the case of *Kiernan* v. *Jersey City, supra,* carry the argument assigned to it. It was there held that an act of dedication by the owner of property upon which there was a mortgage, did not, unless assented to by the mortgagee, do more than create an equity in the public to have the land opened for a highway, provided this did not interfere with the security of the mortgage; and that the foreclosure therein did, in fact, cut off the right of the city in the dedication, and that inasmuch as the mortgagee had not, nor had those claiming under him, made any prior or subsequent dedication, there was no ground for the city's contention that the street was a public highway. It is true, as noted above, that in the instant case there was an outstanding mortgage at the time of the making and filing of the maps, and that this mortgage was subsequently foreclosed, but the deed by which the master conveyed to effect the foreclosure sale not only specifically refers to the map of 1870 but also makes particular mention of Van Keuren avenue. So that it is not demonstrated that the filing of the map, with such dedication as that imports, was a nullity either because Morgan was merely a trustee or because of the mortgage outstanding at the time.

But whatever doubt there may be as to Morgan's authority with respect to the map, it is conceded that he did in fact cause the map to be made and filed and that he made conveyances in accordance therewith; and further, that the map delineated Van Keuren avenue as a highway and the lands abutting thereon as divided into lots. The complainant, for a portion of its lands, takes its title by an unbroken chain leading from Morgan, and by deeds that in terms incorporate the map and Van Keuren avenue into the description. Keeney, Bumsted and Van Keuren, having acquired title

from Morgan, made conveyance in 1871 (as *supra*) to John R. Halladay of "all those certain lots * * * which on a map now on file in the office of the clerk of Hudson county entitled 'Map of property belonging to Stephen Morgan and J. V. H. Van Reypen in the 10th Ward of Jersey City, 1870' are designated as lots numbered 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75 and 76 in block marked A, bounded and described as follows: Beginning at a point in the northwesterly line of a certain street or right of way granted to C. C. Van Reypen by the Erie Railway Company by deed heretofore recorded in Hudson county clerk's office where said line is intersected by the northeasterly line of Van Keuren avenue; thence running northwesterly along the line of Van Keuren avenue five hundred and ten feet more or less to line of lot 56; thence northeasterly along the line of lot 56 at right angles with the line of Van Keuren avenue ninety-four feet seven inches more or less to lands of ......... O'Brien; thence along said lands on a course south forty-nine degrees fourteen inches east five hundred feet four inches more or less to the aforesaid right of way; thence along the said right of way in a southerly direction eighty-nine feet ten inches more or less to point or place of beginning." The conveyance, in 1890, from Halladay to Charles S. Dodge and Edward K. Meigs used the same description down to and including the words "in Block A;" from which point the later deed reads "and now known upon the assessor's map as block six hundred and eighty-one A (681a). Said lots are each twenty-five feet in width lot fifty-seven being ninety-four feet and seven inches in depth upon its westerly line and lot seventy-two ninety feet and six inches in depth upon its easterly line and all of said lots front upon the northeasterly side of Van Keuren avenue as laid down upon the aforesaid map." The conveyance, in 1894, from Dodge and Meigs to the complainant was by the description in the last mentioned deed. The complainant does not and cannot question that ownership in fee of this portion lay in Keeney, Bumsted and Van Keuren. It is through them that the com-

plainant gets title. They being the owners of a larger tract acquired under a different description, parceled out the specific tract now under discussion and in so doing constructed a new description, adopted the 1870 map then of public record and by three specific references recognized the existence of Van Keuren avenue, even made it the boundary line of the lands conveyed. Nor was this an isolated instance of the adoption, by these men, of the 1870 map. Within a year after that transaction they executed and delivered three other deeds—one to John R. Halladay and two to the New Jersey Midland Railway Company—in two of which the 1870 map and Van Keuren avenue are actively referred to in the conveyancing description and in the other of which, while the map is not mentioned by title, the description is obviously taken therefrom and Van Keuren avenue and Catherine street are specifically mentioned as boundaries. True, much of the remaining lands of these owners were sold away from them by foreclosure sale, but the master's deed, Douglass, Master, to Toffey et al., *supra,* preserves the descriptions thus created. Moreover, this foreclosure deed leaves in full force and effect the two conveyances to the New Jersey Midland Railway Company and the conveyance of twenty lots to Halladay; and when, as in the third exception, it excepts "all that other portion of said mortgaged premises beginning at a point * * * and from thence running westerly along the center line of Van Keuren avenue," it must be understood as recognizing, not merely the existence of title in another, but the existence, as well, of Van Keuren avenue, through the center of which the line ran.

The ancient rule as stated by Mr. Justice Depue in *Trustees of M. E. Church* v. *Hoboken, supra,* has been repeatedly affirmed by this court as the law of the state. *Clark* v. *City of Elizabeth, 40 N. J. Law 172; City of Long Branch* v. *Toovey, 104 N. J. Law 335.* Of similar import is *McAndrews & Forbes Co.* v. *Camden, 78 N. J. Eq. 244.*

We are brought to the conclusion that in line with the trend of judicial opinion thus expressed, the owners of property, when they have knowledge of a map filed in the public

records laying off that property in lots, with streets and avenues intersecting it, and sell such lots by reference to the said map and the streets and avenues thereon shown, thereby adopt the map and make dedication to the public of the streets and avenues thus specially designated. Van Keuren avenue, by the action of the owners, Messrs. Keeney, Bumsted and Van Keuren, became dedicated to the public use. Once the legal status, as dedicated to the public, attaches, and has become factually established, the dedication becomes irrevocable, unless the concession be expressly rejected by the lawfully constituted authorities; the exercise of the public right of actual possession and dominion over such property may be suspended and lie dormant until such time as, in the judgment of the proper legal authority, the public exigencies require their possession and use. *City of Long Branch* v. *Toovey, supra; Price* v. *Plainfield, 40 N. J. Law 608, 614; McAndrews & Forbes Co.* v. *Camden, supra.* Lapse of time, however long the public right in a street is suspended, though coupled with an user by the owner, which would otherwise be adverse, will not make title by prescription against the public. *Hoboken Land and Improvement Co.* v. *Mayor, &c., of Hoboken, 36 N. J. Law 540.* It is consequently unnecessary to consider whether the proofs, *pro* and *con,* throw the balance of weight for or against a distinct act, or distinct acts, of acceptance by the municipality. Certainly, there has been no express rejection by the lawfully constituted authorities. The formal act of the city in vacating and relocating a part of Van Keuren avenue seems, necessarily, a recognition of public rights therein. An acceptance, if such be essential, may be found in the direct and positive assertions to that effect in the answer filed by the mayor and aldermen of Jersey City to the bill of complaint. *Camden* v. *McAndrews & Forbes Co., 85 N. J. Law 260, 266; Atlantic City* v. *Groff, 64 N. J. Law 527.*

The complainant, in taking conveyance from Dodge and Meigs, accepted a deed that was an "out and out" recognition of the 1870 map and of the existence of Van Keuren avenue as thereon shown; "and that acceptance operated as an

assent by the grantee to the devotion of the land to any public uses defined in or arising from the language of the deed." *Camden* v. *McAndrews & Forbes Co., supra; Earle* v. *Mayor, &c., of New Brunswick, 38 N. J. Law 47.* We consider, also, that the dedication to street uses was a general scheme, not intended to be, and not in fact, limited to the specific frontage of the individual conveyances, with the nearest cross-street outlets.

The conclusion thus reached is emphasized by a multitude of references, in the title chain of the complainant, to the 1870 map and to various streets shown thereon. Indeed no branch of the chain of title to the *locus in quo* is without a deed containing some such references. The complete title passes through one or more of the following channels—(1) the deed from Morgan to Bumsted, Keeney and Van Keuren, discussed, *supra;* (2) deed, Douglass, Master in chancery, to Toffey et al., dated April 18th, 1879, discussed, *supra;* and (3) deed, Davis, sheriff, to Toffey, mentioned, *supra,* which in describing the excepted parcels refers to the 1870 map by full title and names Van Keuren avenue and other streets shown on the map as boundaries, sometimes designating the center line of the street and sometimes the side line. Amongst the mesne conveyances is that of Toffey et al. to Dodge & Meigs, partners, as Dodge & Company, dated September 24th, 1888, already mentioned, conveying the bulk of complainant's lands, referring specifically, in the exceptions, to the map and the streets under discussion and adding, generally, "subject nevertheless to the public easements in any street or streets crossing or projected across said lands, if any such right of way or public easement exists." Also, the deed from Dodge & Meigs to Dodge & Bliss Box Company, dated October 12th, 1891, followed, in the chain, by deed from Dodge & Bliss Box Company to the complainant, dated November 19th, 1894, conveys a part of the land located at Fourth street "as the same is shown on a map entitled map of the 9th, 10th, 11th and 12th wards of Jersey City, formerly the city of Hudson, made for the Mayor and Aldermen of Jersey City, 1871." This map showed Van Keuren avenue,

with the lots thereon and the cross streets branching therefrom precisely as the same appear on the 1870 map.

We find that there was a dedication of Van Keuren avenue to the public use; that there has been no forfeiture of such public interest, and that the complainant, in accepting deeds which passed the land subject to such use assented to the devotion of the land thereto.

We have not considered and do not pass upon the question of acquisition of rights in the public by adverse user nor the question of special rights in the Public Service Electric and Gas Company because of its chain of title as a property owner within the area of the filed maps. We think that under our findings these questions become moot. Of course, the contractual rights of the Public Service Electric and Gas Company under its conduit agreement are to be preserved as against the complainant.

The decree of the court of chancery will be reversed, to the end that a decree be entered settling the rights of the parties in accordance with the views herein expressed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER,. KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.