115 N.J. Super. 489 (1971)
280 A.2d 227
BROOKDALE PARK HOMES, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
THE TOWNSHIP OF BRIDGEWATER, A MUNICIPAL CORPORATION OF NEW JERSEY, AND THE PLANNING BOARD OF BRIDGEWATER TOWNSHIP, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 13, 1971.
*491 Mr. Jack J. Camillo for plaintiff (Messrs. McDonough, Murray & Meeker, attorneys).
Mr. Gene G. King for defendants (Messrs. Allgair, King & Kelleher, attorneys).
SEIDMAN, J.C.C. (temporarily assigned).
Plaintiff Brookdale Park Homes, Inc., in its complaint against the Township of Bridgewater and its planning board, seeks to quiet title to a tract of land owned by it and said to have been reserved for recreational purposes when the local planning board granted final approval for a major subdivision which included the tract in question. As additional relief, plaintiff demands judgment declaring the reservation void and vacating any interest the township may have in the affected lot.
The parties have submitted the issues to the court on a stipulation of facts and exhibits.
From the exhibits, consisting of copies of pertinent maps, planning board minutes and other related documents, the court finds the sequence of events to be as follows:
*492 1. On May 15, 1956 Charles Bicknell, a vendee under contract, filed with the township planning board an application for classification of a sketch plat. The tract, situated on the westerly side of Tullo Road and containing 22.318 acres, was divided into 20 building lots. The map was classified as major subdivision.
2. At a planning board meeting on May 28, 1956, during a discussion of the proposed subdivision, "a recreational area was also asked for and the Planning Board suggested one lot would be satisfactory."
3. On June 19, 1956 Bicknell applied for tentative approval of the subdivision plat, the details of which were essentially the same as those on the sketch plat. The accompanying map, entitled "Martinsville Estates," depicted 20 lots, 10 on each side of a proposed street running westerly from Tullo Road. Lot 20 (the one in question), about an acre in size, was located on the southerly side of the street and at the westerly end of the tract.
4. The subdivision was discussed at a meeting of the board on June 19, 1956. Bicknell was represented by counsel, who stated his client was unwilling to provide such areas (recreational) and challenged their usefulness. "The Board invited Mr. Welch to further discuss the matter with his client and will reschedule his application for Tentative Approval for the next regular meeting on July 17, providing the requirements of the Township Ordinance are complied with."
5. By deed dated July 2, 1956 Arnold Gussen, Sr. and Anna K. Gussen conveyed the tract to Charles Bicknell and Ann Marion Bicknell, his wife, and Harold Brynildsen and Evelyn Brynildsen, his wife.
6. On August 7, 1956 Harold Brynildsen and Charles Bicknell filed with the planning board an application for tentative approval of a preliminary subdivision plat. It described the same tract, but the number of proposed lots was stated to be 19.
7. Submitted with the application was a map, similar to the one referred to earlier herein, which again referred to *493 the subdivision as "Martinsville Estates" and which showed the same layout of lots, except that the one previously shown as number 20 was now designated "Playground Area."
8. At the public hearing on September 18, 1956, and at the meeting of November 30, 1956 when preliminary approval was granted, the subject of the playground area was not discussed.
9. On January 15, 1957 an apparent new owner of the tract, one Richard Plenninger, and his engineer appeared before the board on problems relating solely to drainage and paving.
10. The next owner was H. & M. Construction Company, to whom Bicknell and Brynildsen had conveyed the tract on July 9, 1957. Although its representative discussed various matters at the April and May meetings of the board, the subject of the recreation area was not raised.
11. When H. & M. Construction Co. applied for and was granted final approval of the subdivision on October 22, 1957, the accompanying map showed the same playground area as had been depicted on the earlier one.
12. Thereafter, on December 3, 1957 the final plat, "Map of Martinsville Estates," was filed in the office of the Somerset County Clerk. The lot marked "Playground Area" is shown on it, and is also designated thereon as Lot 1, Block 5606.
13. On December 10, 1957 H. & M. Construction Co. conveyed the tract to Brookdale Park Homes, Inc., plaintiff herein.
In addition to the above, counsel have stipulated these facts:
A. A subdivision performance bond was given by H. & M. Construction Co., as principal, and Continental Casualty Company, as surety, in the penal sum of $28,134.00 to guarantee the installation of the subdivision improvements required for the subdivision shown on the "Map of Martinsville Estates" which was filed in the Somerset County Clerk's Office on December 3, 1957 as Map No. 542. This bond was dated October 28, 1957.
*494 B. Sheet 72 (B) of the Bridgewater Township Tax Map, showing the area in question, bears no playground area designated or other notation for Lot 1 in Block 5606  the land which is the subject of this civil action.
C. The Township Committee of Bridgewater Township has not passed any resolution or motion or ordinance formally accepting Lot 1 in Block 5606 on Sheet 72 of the Township Tax Map as a playground area or as a park or other similar public place.
D. No taxes have been paid on Lot 1 in Block 5606 on Sheet 72 of the Township Tax Map since the finalization of the subdivision of the 22-acre tract known as Martinsville Estates, and no taxes have been assessed thereon.
E. The plaintiff has never used or made physical use of Lot 1 in Block 5606 on Sheet 72 of the Township Tax Map  the premises which are the subject of this civil action.
F. If the plaintiff had applied for a permit to build a single-family dwelling on Lot 1 in Block 5606 as shown on Sheet 72 of the Township Tax Map, in conformity with all Township Ordinance and regulations, such application would have been denied because of the designation "playground area" shown on the filed Map of Martinsville Estates.
G. The Parks and Recreation Commission of Bridgewater Township has under consideration a Park Plan which involves the full use of Lot 1, Block 5606 (The premises in question) for block park purposes and as access to a large proposed park area adjacent thereto.
Plaintiff contends that the local planning board required a portion of the proposed subdivision to be set aside for playground or recreational purposes as a condition of subdivision approval, and asserts that since the township had neither entered into a contract to purchase the site nor instituted condemnation proceedings to acquire it, pursuant to N.J.S. 40:55-1.20, the reservation is no longer effective. The township concedes a master plan had not been adopted and standards for the allocation of portions of subdivision for park and playground purposes were not contained in the land subdivision ordinance, and acknowledges that the planning board could not validly require a reservation of the playground area.
The second count of the complaint charges that the "reservation" of the playground site "was involuntary and was made under duress in that the Bridgewater Township Planning Board stated that it would not grant subdivision *495 approval unless such playground site was reserved." The subject of the playground area was discussed at only two planning board meetings. At one, in May 1956, at a preliminary discussion of the proposed subdivision when Charles Bickness was the applicant, the minutes reveal that "a recreational area was also asked for and the Planning Board suggested one lot would be satisfactory." No objection was raised. The matter was discussed again in June 1956, at which time Bicknell's counsel expressed his client's unwillingness to provide a recreation area. Nevertheless, the preliminary plot plan submitted for approval in August 1956 indicated one of the lots as "Playground Area," and the lot continued to be so marked on later maps, including the one filed with county clerk's office. A scrutiny of the planning board minutes fails to support plaintiff's contention that the designation was made "by virtue of undue coercion and duress." There is no suggestion that approval of the subdivision was conditioned upon the setting aside of a lot for playground purposes, or that the applicant was compelled in any other way to act against his will. Cf. West Park Avenue, Inc. v. Ocean Tp., 48 N.J. 122 (1966). It should also be noted that plaintiff was not the applicant at the time of the alleged coercion.
If the designation of the lot in question as a playground area was not a reservation within the scope of N.J.S. 40:55-1.20, and if it did not result from duress or coercion, what, then, is the basis for the relief sought by plaintiff? Defendants urge that the filed map, with the designation thereon of a playground area, constituted an irrevocable dedication of the lot for a public purpose.
Despite the fact that the first count of the complaint is based upon the alleged failure of the township to enter into a contract to purchase the lot or to proceed to acquire it by condemnation within one year of the purported reservation, an issue no longer in the case, the pretrial order states the purpose of the suit to be a "Quiet title action to compel vacation of dedication of recreational area on subdivision map." Dedication *496 is one of the listed issues, and plaintiff, in its factual contentions, denies that there was a dedication, thus at least impliedly recognizing its existence as an issue.
Defendants interpose several challenges to plaintiff's cause of action. They say, first, that plaintiff has not been in "peaceable possession" of the lot in question. There is no doubt that the purpose of the statute relating to actions to quiet title, N.J.S. 2A:62-1 et seq., is to put within the power of a person, who is in peaceable possession of realty as an owner, a means to compel any other person, who asserts a hostile right or claim, or who is reputed to hold such a right or claim, to come forward and either disclaim or show his right or claim, and submit it to judicial determination. Paterson v. Schneider, 31 N.J. Super. 598 (App. Div. 1954). One could argue that the facts present in this case do not fit within the statutory action to quiet title, but the parties have stipulated that plaintiff would not be entitled to a permit to build a single-family dwelling on the lot. To that extent, there is a potential cloud on the title, and equity has jurisdiction to remove the cloud if such relief is warranted. See Garden of Memories, Inc. v. Forest Lawn Memorial Park Assn, 109 N.J. Super. 523, 532 (App. Div. 1970), certif. den. 56 N.J. 476 (1970).
Another contention is that plaintiff has no title to the lot in question sufficient to support an action to quiet title, on the theory that it was charged with knowledge of the subdivision map when it acquired ownership and that its title is subject to the dedication, so that it cannot now prevail. The argument is without merit. Assuming a dedication or offer thereof in this case, and no municipal acceptance thereof, the fee nevertheless remains in the grantor, subject only to such rights as the public may have, if any. See Dummer v. Board of Selectmen, 20 N.J.L. 86 (Sup. Ct. 1843); Trustees of M.E. Church of Hoboken v. Mayor and Common Council of Hoboken, 33 N.J.L. 13, 19 (Sup. Ct. 1868).
*497 The crux of the case is whether there was a dedication of the lot in question. The basic principles which apply are set forth in Velasco v. Goldman Builders, Inc., 93 N.J. Super. 123 (App. Div. 1966):
The term "dedication" has been defined as "the permanent devotion of private property to a use that concerns the public in its municipal character * * *." Black v. Central Railroad Co., 85 N.J.L. 197, 202 (E. & A. 1913). * * * Under common law principles, to which we look for guidance, dedications may be either express or implied. The former is ordinarily effected by a deed of grant or by a written or oral declaration of intention, while an implied dedication arises "from conduct of the dedicator which falls short of an express statement of intent to dedicate but which nevertheless manifests an intent to dedicate land to public use." Cunningham and Tischler, "Dedication of Land in New Jersey," 15 Rutgers L. Rev. 377, 384-385 (1961).
The dedication of private lands to public use being essentially a matter of intent, in assessing the quality thereof the court should concern itself not with intentions that remain unrevealed but with those evidenced "by the acts or conduct of the dedicator." Haven Homes v. Raritan Tp., 19 N.J. 239-246 (1955). Although an acceptance of a dedication of the locus in quo is necessary prior to imposing responsibilities upon a municipality and vesting any present right of use in the public, a dedication is, nevertheless, complete and irrevocable as far as the landowner is concerned as soon as he has manifested an intent to devote the land to public use. See Trustees of M.E. Church of Hoboken v. Mayor and Common Council of City of Hoboken, 33 N.J.L. 13, 21-22 (Sup. Ct. 1868); Coleman House, Inc. v. City of Asbury Park, 129 N.J. Eq. 399, 401-402 (Ch. 1941), and Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119, 126 (1956).
Indeed the dedication may never be accepted, but the power of acceptance continues indefinitely in the public authorities until such time as they reject or vacate the dedicated lands by official municipal legislative action. See Osterweil v. City of Newark, 116 N.J.L. 227, 230-231 (E. & A. 1936), and Highway Holding Co. v. Yara Engineering Corp., supra. A dedication may be "designed by the owner to be accepted by the public in praesenti or in futuro." Mayor, etc., of Jersey City v. Morris Canal and Banking Co., 12 N.J. Eq. 547, 562-563 (E. & A. 1859), and the actual possession and dominion over the dedicated lands "may be suspended and lie dormant until such time as in the judgment of the proper local authorities the public exigencies require their possession and use." Lower Tp. v. Reeves, 14 N.J. Super. 180, 183 (Ch. Div. 1951). See also George Van Tassel's, etc., Inc. v. Town of Bloomfield, 8 N.J. Super. 524, 532 (Ch. Div. 1950). [at 133-135]
*498 For a comprehensive discussion of the subject, see Cunningham and Tischler, "Dedication of Land in New Jersey," 15 Rutgers L. Rev. 377 (1961).
Plaintiff's argument on the issue of dedication is difficult to follow. The initial point made is that the element of "voluntariness" must be present for "the legal act of dedication to be fulfilled and thus binding on the person making such dedication." Presumably, plaintiff's position is that if the designation of the playground area was a dedication, it resulted from undue coercion and duress and, therefore, should be vacated. The court has already determined that the setting aside of the lot was not exacted wrongfully by the planning board  proof of coercion and duress is lacking. Consequently, it follows that the designation of the playground area was voluntary on the part of the applicant for subdivision approval.
Plaintiff also argues that the township has not formally accepted the alleged dedication, but defendants do not claim such acceptance. Significantly, plaintiff acknowledges that "there is presently no legal time limit within which an acceptance must take place and that a municipal agency may quite frankly take its time in deciding whether to accept or not."
In Velasco v. Goldman Builders, Inc., supra, the court noted that the dedication of private lands to public use is essentially a matter of intent. This has long been the law in this State. See Central R.R. Co. v. State, 32 N.J.L. 220 (Sup. Ct. 1867); Wood v. Hurd, 34 N.J.L. 87 (Sup. Ct. 1869). If there was a dedication in the case now before the court, it necessarily had to arise by implication from acts and conduct manifesting an intent to dedicate, inasmuch as there was no deed of grant or written or oral declaration of intention.
In determining intent in this case, one must consider what was actually done. The notation "Playground Area" (replacing what had previously been marked lot 20), appears *499 for the first time on the preliminary plot plan of Martinsville Estates, dated June 15, 1956. The revised map of May 13, 1957, when submitted for final approval, contains the same legend, as does the map ultimately filed with the county clerk. The latter also bears this endorsement: "The subdivision shown hereon is made with the free consent and in accordance with the desires of H. & M. Construction Co. by Harry Zilinski sec., owners."
There is no doubt that the selling of lands with reference to a map upon which lots and streets are delineated constitutes a dedication of the streets to the public, which dedication cannot be revoked except by consent of the municipality. Haven Homes v. Raritan Tp., 19 N.J. 239 (1955); Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119 (1956); Kiernan v. Primavera, 109 N.J. Super. 231, 235 (Ch. Div. 1970). The same rule of dedication applies where the filed map contains an area or lot marked "park" or for a similar recreational purpose. Price v. Inhabitants of Plainfield, 40 N.J.L. 608 (E. & A. 1878); Mayor, etc., Bayonne v. Ford, 43 N.J.L. 292 (Sup. Ct. 1881); Bozarth v. Egg Harbor City, 89 N.J. Eq. 26 (Ch. 1918); Broadway Trust Co. v. Haddonfield, 95 N.J. Eq. 521 (Ch. 1924), aff'd 96 N.J. Eq. 734 (E. & A. 1924). See also Blank v. Haddonfield, 95 N.J. Eq. 528 (Ch. 1924).
Neither the stipulated exhibits nor the agreed facts indicate whether lots in the subdivision were sold by reference to the filed map, although it is common practice to do so. Earlier cases held that where no conveyances have been made by reference to a map, the showing of a street on the map is neither a dedication nor a tender of dedication to the municipality. Currie v. Jersey City, 95 N.J. Eq. 412, 414 (Ch. 1924), aff'd 98 N.J. Eq. 689 (E. & A. 1925). See also Vanatta v. Jones, 42 N.J.L. 561, 563-564 (Sup. Ct. 1880). However, in the case of N.J. Highway Authority v. Johnson, 35 N.J. Super. 203 (App. Div. 1944), the court said:
*500 A distinction is perceptible between an offer to dedicate and a complete dedication. It was long ago held that where the owner of urban property has laid it off in lots, with streets, avenues, and alleys intersecting it, and conveys the lots with reference to the map, his acts will be deemed to constitute a dedication of the streets, avenues and alleys to the public. Clark v. City of Elizabeth, 40 N.J.L. 172, 174 (E. & A. 1878); Dodge & Bliss Co. v. Mayor and Alderman of Jersey City, 105 N.J. Eq. 545, 550 (E. & A. 1930). Here there was no proof that the owner had sold any lot with specific reference to the filed map.
Before there was any legislative enactment relative to the filing of such maps the owner of lands might lay them out into blocks and streets at his own free will and the public would not acquire any interest therein until by some decisive and irrevocable act, either toward the public or toward a grantee, it became improper and unjust to permit him to deny the public use and character of the highways. * * *
Here legislation existed regulating the approval and filing of such a map, and under recent legislation considerable formality attends the preparation, the requisite approvals and the permissible filing of such maps and ground plans. The deliberate and successful pursuit of such formalities by the owner of land does carry, we think, the manifest implication of an offer to dedicate for the public use those delineated areas which are definitely designated on the map or plan as streets. [at 211-212]
The above quotation is equally applicable to the designation on a map of a park or, as here, a playground area.
The court is convinced that the evidence in this case warrants the factual conclusion of an intent to dedicate  or offer to dedicate  the playground area to the public. This conclusion is reached not only because of the filing of the map and the legend thereon. There are other facts, none of which, standing alone, is decisive, but, taken together, they support the conclusion. One is the passage of time. More than ten years elapsed between the filing of the map and the institution of suit, during which no attempt seems to have been made by plaintiff or its predecessors in title to repudiate or set aside the dedication. Defendants' brief asserts that plaintiff requested the governing body to adopt an ordinance vacating the playground area, apparently in 1968. The stipulated facts do not include the request, but in any event it was obviously unsuccessful. Since the *501 plaintiff, presumably with full knowledge of all the facts, did nothing to assert its claim, such inaction justifies the inference that plaintiff acknowledged the existence of the dedication. Indeed, the attempt to have the dedication vacated by ordinance can be construed as at least an implied recognition thereof.
It is also noted that no taxes have been assessed against the lot in question. While the failure to assess taxes does not constitute municipal acceptance of dedicated land, Arnold v. Orange, 73 N.J. Eq. 280, 282 (Ch. 1907); Fuller v. Belleville Tp., 67 N.J. Eq. 468 (Ch. 1904); Kiernan v. Primavera, supra; and although neither side claims there was an acceptance here, nevertheless, plaintiff's apparent awareness that taxes were not assessed is yet another fact to be considered on the issue of intent to dedicate. See Currie v. Jersey City, supra, 95 N.J. Eq. at pp. 415-416.
Once the owner's intention to dedicate his property to a public use is unequivocally manifested, the power of acceptance continues indefinitely in the general public and in the authorities who represent the public. Cunningham and Tischler, op. cit. supra, at p. 383 and cases cited. See also Highway Holding Co. v. Yara Engineering Corp., supra, 22 N.J. at p. 125. It may be exercised at any time the public wants or convenience requires such action. Trustees of M.E. Church of Hoboken v. Mayor and Common Council of Hoboken, supra.
Bridgewater's intentions with respect to the lot in question are clear. Among the exhibits is a letter dated July 25, 1968, from the Superintendent of Parks and Recreation to the mayor. It is in response to an inquiry concerning the lot and contains a comment that "I did not find that this particular piece of land would have any great recreation or park importance to the Committee's overall program. Its size is small and did not lend itself to economic development nor anything other than a tot lot." The letter may have been prompted by the request to vacate the playground area, but the stipulated facts do not explain it. However, *502 it cannot be construed as an unequivocal rejection of the lot by the township. On the contrary, another exhibit, containing excerpts from a 1937 report on a master plan, stresses the absence of parks and playgrounds in the municipality and recommends that playgrounds for both child and adult use should be within or convenient to every residential neighborhood; and one of the stipulated facts is that the "Parks and Recreation Commission of Bridgewater Township has under consideration a Park Plan which involves the full use of Lot 1, Block 5606 (the premises in question) for block park purposes and as access to a larger proposed park area adjacent thereto."
To summarize, the court concludes that plaintiff's predecessors in title voluntarily and unequivocally manifested their intention to dedicate (or offer to dedicate) the lot in question to public use as a playground area, and that such dedication or offer may be accepted or rejected by the public authorities at any time in the future. Consequently, plaintiff is not entitled to the relief it seeks.
The result reached renders moot defendants' contention that the owners of lots shown on the map of Martinsville estates should have been joined as necessary parties, and plaintiff's response that the owners released whatever rights they might have had and therefore did not have to be joined.
There will be a judgment in favor of the defendants. Counsel for the defendants shall submit a form of such judgment in accordance with R. 4:42-1.