JOSEPH S. FRELINGHUYSEN, PROSECUTOR, v. THE STATE HIGHWAY COMMISSION OF THE STATE OF NEW JERSEY, RESPONDENT.

Submitted January 31, 1930—Decided October 30, 1930.

Before Justices TRENCHARD, LLOYD and CASE.

For the prosecutor, *McDermott, Enright & Carpenter.*

For the respondent, *William A. Stevens,* attorney-general, *George T. Vickers* and *Walter H. Bacon, Jr.*

The opinion of the court was delivered by

LLOYD, J. The writ of *certiorari* in this case was allowed by a member of this court to review his order appointing commissioners to appraise the lands of the prosecutor set

forth in the petition as necessary and required to be taken by the State of New Jersey for public use in the construction of state highway route No. 29, together with the antecedent proceedings leading up to such order.

It is admitted that the land involved is not to be used by the state highway commission as part of the highway for public travel, but is acquired for the purpose of eliminating obstacles to the view of travelers on the intersecting highways, the object being the public safety, particularly in the use of the automobile as a present means of transportation.

Three reasons are urged by the prosecutor for setting aside the order: (1) That the commission is without power under the Eminent Domain law to take lands for such purpose; (2) that the title of the act is not sufficiently broad to confer a power of condemnations, and (3) that the state cannot constitutionally take, as in this case is demanded, all of the right, title and interest of the prosecutor.

The first two of these contentions we think are without merit. The State of New Jersey has undertaken to establish within its borders a comprehensive scheme of highways adapted and necessary to the full use and enjoyment of modern means of transportation, and to this end in 1917, in chapter 14 of the laws of that year, it directed the state highway commission to "as soon as practicable lay out" certain designated routes. It authorized the commission to lay out, open and improve new roads as well as to utilize and improve existing roads; also to lay out routes in continuation of, connecting with or in addition to the routes specified.

In 1927, chapter 319 was passed. *Pamph. L., p.* 712. In this act various routes were defined and the state highway commission was given substantially the same powers as were conferred by the earlier act. In section 111, subdivision E of this act (at *p.* 725) the commission is authorized "to do and perform whatever may be necessary or desirable to effectuate the object and purpose of this act," and the statute directs that the powers conferred are to be liberally construed.

In addition to the broad powers conferred by the act, section 118 (at *p.* 732) provides for the acquisition of land

by lease, gift, purchase, demise or condemnation for any purpose connected with highways, including the removal of obstructions to traffic and to the view and all other things and services necessary or convenient for the performance of the duty imposed by the act, and that in condemnation the proceedings shall be in accordance with the Eminent Domain act of 1900.

We live in an age of development in which the advances of science and invention have placed under our control forces of nature which were little dreamed of, much less availed of, by our fathers; most pronounced are those realized in our mode of transportation. The endeavor to keep pace with these developments involves obvious departures from the construction and character of highways that were suitable for the earlier forms of travel. Before the advent of the self-moving vehicle on the road the element of view at public crossroads was not in public conception deemed of moment. For the safety of the traveling public the speed of the automobile has made a reasonable view of approaching travel as essential as the safe construction of the highway itself. To this end new and existing roads are straightened, curves are banked, at intersections objects obstructing the view are removed. All of these things are clearly within the legislative scheme of providing safe highways for its own citizens and others from without, and, as we think, as clearly indicated in the powers conferred.

With the second question, namely, the title of the act, we have little difficulty. It is entitled "An act to establish a state highway system and to provide for the improvement, betterment, reconstruction, resurfacing, maintenance, repair and regulation of the use thereof," and to this end in the body of the act sundry routes are established and the state highway commission is given the necessary powers to perform the duties called for by the body of the act.

It is said that under this the power to condemn cannot be exercised; that the object is not expressed in the title. That the establishment of a state highway system requires the acquisition of land upon which such system should operate no

one will question. The mode of acquisition is but a detail in the legislative scheme. It is not an object, but a means incident to the accomplishment of the object. The title in substantially the same form has existed now for thirteen years and under it condemnation proceedings numerous in number and involving great value have been carried through to completion without attack from any source. We have no hesitation in saying that the title of the act of 1927 is not violative of the constitutional provision in article 4, section 7, paragraph 4, which provides that "every law shall embrace but one object, and that shall be expressed in the title."

We come now to the third and last point which, though of minor importance, perhaps, to the owner, is of vital importance as bearing upon the fundamental powers conferred upon the legislature by the constitution of the state. The petition for the appointment of commissioners sets forth that the state highway commission has determined to acquire in the name of the state as per a resolution adopted by the commission the land in question, "together with all right, title and interest of Joseph S. Frelinghuysen in and to West End avenue, adjacent to the above-described premises," and it is asserted in the brief of counsel for the commission that it is the purpose to take the entire fee of Frelinghuysen in the land to be condemned.

The right of the individual to be secure in his person and his property has been guaranteed by the constitution of the state and the constitution of the United States. In 1832 it was declared by the Chancellor of this state in the case of *Scudder* v. *Trenton and Delaware Falls Co.,* 1 *N. J. Eq.* 694, that "private property cannot be taken for private use. The legislature has no right to take the property of one man and give it to another even upon compensation being made," and since that time neither the constitution of 1844 nor the present constitution confer such power. That the power is thus limited is apparent from the recent decision of the Court of Errors and Appeals in *Landell* v. *State,* 101 *N. J. L.* 294, 297, in which the Scudder case is cited. In 20 *C. J.* 546, it is said that "independently of express authority given by the

constitution private property can be taken only for a public use, and the legislature cannot authorize a taking for strictly a private use even upon making compensation. The necessity that the use shall be public excludes the idea that property may be taken under semblance of public use and ultimately conveyed and appropriated to a private use," citing numerous authorities.

Such we conceive to be the law of our own state. The present constitution provides in article 1, section 16, that "private property shall not be taken for public uses without just compensation." This is a recognition of a legislative power to take private property for a public use, but is far from giving authority to take such property for other than public uses. When the state takes the property of its citizens for highway purposes, it acquires an easement only, and it would seem that it is empowered to take only so much of the title as is essential to the public use authorized. *New Jersey Zinc and Iron Co.* v. *Morris Canal and Banking Co.,* 44 *N. J. Eq.* 398, 404. To take all the right, title and interest of an owner obviously may be beyond such necessity and be a contradiction in terms of the right to acquire an easement only. Public uses are constantly changing and particularly with regard to the lands occupied by our highways; the courses and directions of the highways are frequently altered and upon the abandonment of such lands for such use, unless the state holds a greater title by the voluntary act of the owner, the easement ceases and the state has no further interest.

To sustain the contention of the commission in this case would open the door to wide and dangerous invasions of private property. A power thus conferred would permit the acquisition of private property for a public use with its ultimate destination intended to be devoted to a private use, and foreign to the cause for which it was condemned.

Our view is that this power does not exist, nor do we think the legislation, fairly construed, an attempt to exercise such power. Section 100, act of 1927 (at *p.* 718), provides that the commission may lay out, open and improve new roads over "acquired rights of way" and there is nothing further in the

act of 1927 indicating a broader purpose. While it is true that chapter 96 of the laws of 1926 provides that the commission shall have power whenever lands shall "come into its possession or control," or it shall take any such lands or real estate for the uses of a state highway and the lands shall no longer be required for such use, that the commission may sell the same, yet this must be limited to such lands as to which it has acquired a fee by deed, gift, grant or other lawful transfer from the owner. It was not intended to apply to "rights of way" acquired by condemnation. It could scarcely be contended that the power thus conferred was intended to apply to all lands coming into the commission's "possession or control" for this would include lands taken possession of temporarily, to leased lands and those occupied as a temporary possession by the consent of the owner, as well as lands acquired by condemnation for the most temporary needs in highway construction.

The result we reach is that so much of the order as empowers the commission to take all the right, title and interest of the relator in the lands in question is invalid and as thus modified the order will be affirmed.