CAROLYN FAULKS, PLAINTIFF-APPELLANT, v. THE BOR-OUGH OF ALLENHURST, DEFENDANT-RESPONDENT.

Argued May 24, 1935—Decided October 9, 1935.

For the plaintiff-appellant, *Lindabury, Depue & Faulks* (*Walter D. Barker* and *Scott M. Long, Jr.,* of counsel).

For the defendant-respondent, *William J. O'Hagan.*

The opinion of the court was delivered by

CASE, J.    This is an appeal from a judgment of the Supreme Court entered in favor of the defendant in an action of ejectment following a trial in the Monmouth Circuit.

Plaintiff owns an ocean front residence property, purchased by her in 1926, which lies in the borough of Allenhurst and on its southerly boundary abuts Elberon avenue, a public highway fifty feet in width.  The boundary line between the borough of Allenhurst and the township of Ocean runs lengthwise through the middle of Elberon avenue.  Up to 1929 the borough of Allenhurst had maintained a sewer pipe under the surface of its portion of Elberon avenue and had flushed its sewage through that pipe into an outfall pipe which extended approximately one thousand feet into the ocean and there discharged.  In 1929 the borough, to obtain a more sanitary system of disposal, removed a section of the sewer pipe at or near the connection with the outfall pipe

and in its place constructed a tank twenty-eight feet six inches in length, twelve feet in width and nine feet six inches in depth. That tank was in the line of the defendant's portion of Elberon avenue and at the easterly end was sixteen feet westerly of the ocean bulkhead line. The tank constituted an underground contact chamber which temporarily held back the sewage to permit sterilization by the admixture of a chlorine solution. To shelter the tanks of chlorine gas, the mixing machinery and other equipment, a structure, designated a chlorinator house, was built above the surface of the ground at the east end of and overlapping a portion of the tank. The building is of stucco, is approximately twelve feet square, measures seven feet from ground to eaves and has a peaked roof. The tank and the chlorinator house constitute a unit—so designed, so constructed and so used. The solution is prepared in the house and passed down into the lower chamber or tank, where it is mixed with the sewage. House and tank must be near each other as it is not feasible to conduct the solution more than one hundred and fifty feet and the one would not function without the other. The delivery of sewage to the contact tank is by the former sewer pipe. The effluent is ultimately discharged into the sea by the theretofore existing outfall pipe.

Plaintiff's contention was that as an abutting owner she owned, subject to the public easement, to the middle of the street wherein the tank and the house were located, that these objects were not within the easements to which land dedicated to street purposes is subject and that the borough, in building and maintaining them, was depriving plaintiff of her lawful possession. The trial judge took the view that the maintenance of the contact tank was a severable use and was within the category of legitimate public street uses. He nonsuited the plaintiff as to it and put the matter of the chlorinator house to the jury. At the close of the case he refused the plaintiff's motion for a directed verdict. The nonsuit and the refusal to direct are the main grounds argued for reversal.

We find no substantial reason for dividing the construction into parts. The chlorinator house and the contact tank are

essential to each other. They were built as a unit and in fact form a unit for the treatment of sewage. They are an integrated construction. The engineer's drawings under which they were built show this conclusively. Their primary function is not to afford passage for sewage. On the contrary it is to retard passage and to utilize that retardation as one of the necessary steps in sterilization. Either, alone, accomplishes no purpose. Proximity of one to the other is necessary. Immediately to the south is Ocean township and to the north is private property, in either of which the defendant has no rights. A more easterly location for the chlorinator house is not practicable because of the waters of the ocean. Plaintiff's property abuts the highway northerly for more than the maximum distance, and precisely the questions now presented would follow the removal of the building to any point in the highway within that distance. Therefore, upon the issues as presented, we conclude that the tank is one with the house. For reasons that will presently appear we think that the whole case could not properly have been nonsuited. Therefore the nonsuit as to the tank was error.

The lands owned by the plaintiff, those where the street now is and where the litigated structures are located and for long distances east, west and north were originally owned by Abner Allen. In 1848 Allen acquired, by deed, a tract of two hundred and forty-seven acres of land bounded on the east by the high water mark of the Atlantic ocean, comprising all of the present borough of Allenhurst and the portion of Ocean township adjacent thereto. His title and his various acts with respect to his title, ownership and possession are not disputed; and the absence of any disproof of that title, ownership and possession forms, as we believe, an important link in the chain of events by which the law is controlled. On October 4th, 1866, Allen conveyed to Mary Boyle—and Boyle presently devised to Emma Knapp—the southern portion of the tract, creating a boundary line between the two divisions that later became and still is the center line of Elberon avenue. There was then no highway, but between 1876 and 1881 Allen and Knapp laid out and opened up a road with the division line between the properties as the cen-

tre line of the new road, which ran from the highway now known as Norwood avenue easterly to the high water mark of the Atlantic ocean. Knapp's grantees made further dedication. The new road, originally called First avenue, is the present Elberon avenue. On June 11th, 1880, Allen filed in the Monmouth county clerk's office a map made by James McCrea, a civil engineer, drawn on a scale of fifty feet to the inch, which shows so much of his then remaining lands as lay between present Norwood avenue and the Atlantic ocean, and shows the location of the then "high water mark" of the ocean. The map also shows a strip of land twenty-five feet in width from the "public road" (Norwood avenue) to high water mark of the Atlantic ocean set off, for street purposes, from Allen's land adjoining the division line between him and Boyle and marked "First avenue." A like strip of land dedicated by Knapp and her successors made up the fifty-foot width. The Allen map also shows at the southeast corner of the tract a lot numbered "1," the north, south and west lines of which are, by compass description, accurately related to established monuments. The south line is made to bound upon "First" (Elberon) avenue, the north and south lines run to high water mark and the easterly boundary is the high water mark of the ocean. Plaintiff by an unbroken chain in title is now seized of the southerly half of Lot No. 1. The conveyance out of Allen was to Harriet Hall and others, dated March 11th, 1881, recorded March 24th, 1881. It identifies the land as lot No. 1 on the said map, gives a fixed starting point by reference to Ocean avenue and, describing by points of the compass, carried the lot from a determined west line along equally determined north and south lines to the high water mark, with "more or less" distances between the west line and the high water mark of two hundred and twenty-six feet on the north side and two hundred and two feet along "First" avenue. It includes a conveyance of all such interest as the grantor might have in the land between high and low water mark. The map, by scale calculation, confirms the foregoing deed distances. Plaintiff, by reason of the conveyance from the riparian commissioners to an intermediate owner, also has the riparian rights "beginning at a point in

the high water line of the Atlantic ocean where the same is intersected by the northerly line of Elberon avenue and from thence easterly in line with the northerly line of Elberon avenue extended one thousand feet."

The acts of the dedication by the owners and of acceptance by the respective municipalities leave no doubt that Elberon avenue is a public highway fifty feet in width. If it be true that the municipality has not accepted the street all the way to high water mark, the dedication by Allen to that point was nevertheless complete and an abutting owner whose lands reach to high water mark has title to the dedicated lands, subject to whatever public easement exists therein. The proofs clearly show that plaintiff is the owner of and in possession of a plot of land abutting on the avenue and therefore her title and legal possession extend to the middle of the street, the freehold being in her subject to the public easement. *Friedman* v. *Snare & Triest Co.,* 71 *N. J. L.* 605; *Brill* v. *Eastern New Jersey Power Co.,* 111 *Id.* 224. We find no proofs in which to ground a claim that the borough, by adverse possession, has divested plaintiff of her title.

The novel and unsupported point is made by defendant that inasmuch as the land for only half of the roadway was dedicated by plaintiff's predecessor in title, plaintiff's interest goes to only half of that half, or a quarter of the width of the street. We adhere to the rule as stated. When Allen conveyed lot No. 1, binding on "First" avenue, the effect was to convey all of the interest he had left in the adjoining lands dedicated by him to street uses. *Salter* v. *Jonas,* 39 *N. J. L.* 469, 472; *Ayres* v. *Pennsylvania Railroad,* 48 *Id.* 44.

The case has points of resemblance to *Faulks* v. *Township Committee of Ocean Township,* 9 *N. J. Mis. R.* 1048; 156 *Atl. Rep.* 761, wherein plaintiff successfully attacked, before Mr. Justice Bodine, an ordinance of the township of Ocean providing for the construction of much the same sort of plant a few feet from the present site, on the opposite side of the street.

Two questions are presented: (1) Is the *locus in quo* a part of Elberon avenue? (2) If the *locus* is in Elberon

avenue, does the use thereof for tank and chlorinator house purposes come within the public easement?

The only remaining aspect of the first question is the relative location of the high water mark. The borough contends that high water mark is westerly of both tank and house, that these structures are, and especially the house is, between high and low water mark, that the present extent of beach easterly of the construction is land reclaimed from the sea and that consequently, as the dedication by Allen for road purposes went, and could go, only to high water mark, the *locus* is riparian land owned by the state and was never a public highway; that the plaintiff cannot claim as an abutting owner in highway lands where no highway exists; that therefore she does not own and is not entitled to the possession of the *locus;* that these contentions are demonstrated, if not clearly, nevertheless with sufficient force to go to the jury. The borough, in support of its claim, produced testimony as to the amount of sand and water that at isolated times had prevailed at a certain "manhole" near the present chlorinator house, the erection of a fence or posts in the vicinity, the condition of the roadway at that spot, the relative positions of a "bluff" and the manhole, the rush of waters in a certain storm, and the like. We think that titles to land may not be so casually put in jeopardy. High water mark has a well defined meaning. It is the line of the medium high tide between the spring and neap tides. *Stevens* v. *Paterson, &c., Railroad Co.,* 34 *N. J. L.* 532, 542; *New Jersey Zinc and Iron Co.* v. *Morris Canal, &c.,* 44 *N. J. Eq.* 398, 401. The borough introduced no evidence of any change in the high water mark as so defined. The muniments of title definitely place the high water mark at a point easterly of the present construction. There is nothing worthy of being called evidence to show that that mark has receded. It follows that the tank and the house are constructed in Elberon avenue adjacent to plaintiff's property and that plaintiff's title extends to the middle of the street (inclusive of the *locus*), subject to the public easement.

Defendant does not undertake to justify the presence of the chlorinator house as a lawful street use. It is difficult

to imagine a use more foreign to the function of a street, as a means of passage, than the construction of a house, or structure in the semblance of a house, which has no relationship to the movement of traffic and which indeed is an effective bar to traffic. That which is destructive of the uses for which the lands were dedicated and at the same time is injurious to the proprietor of the soil cannot be said to be a part of the public easement. *Trustees of Methodist Episcopal Church of Hoboken* v. *Council of Hoboken*, 33 *N. J. L.* 13, 19; *State* v. *Laverack*, 34 *Id.* 201, 206; *Laurel Garden Corp.* v. *New Jersey Bell Telephone Co.*, 109 *Id.* 171, 172. The chlorinator house is not within the public easement to which the land of the highway is subject. Defendant rests its case, so far as concerns the structure above ground upon the proposition that the land is not and never was the property of the plaintiff or her predecessors in title, a contention which, as we have found, is without factual substance in the proofs. Our view expressed above that the contact tank and the chlorinator house constitute a unit which as a whole either is or is not an unlawful interruption of plaintiff's possession and our finding that an essential part of that integrated construction is an unlawful dispossession make it unnecessary to consider whether the tank of and by itself would offend against plaintiff's possessory rights. We note, however, that the question involves not the right of the municipality to carry sewage underground, but to hold back and treat that sewage, with attendant incidents that need not here be discussed.

Defendant wrongfully deprived plaintiff of her possession. If plaintiff has land or interest therein which the defendant needs for its sewage disposal purposes, but cannot procure by negotiation, acquisition may be had by condemnation and payment. The Home Rule act, chapter 152, *Pamph. L.* 1917, *art.* XXI, § 1. That statute is cited on defendant's brief as an authority for maintaining the tank in the street. But it is not argued that the statute applies to the chlorinator house, and we find that it does not.

The plaintiff having proved her case and the proofs having disclosed no factual dispute for jury consideration, the

plaintiff's motion for a directed verdict should have been granted.

The only point presented by plaintiff on the appeal that is not disposed of herein is an evidence ruling which, because of our determination, becomes unimportant.

Judgment below will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, HETFIELD, DEAR, WELLS, JJ. 13.