SHERMAN R. RING AND JACK B. BRODY, INDIVIDUALLY AND PARTNERS TRADING AS R & B TRUCK & PARTS CO., PROSECUTORS, v. THE BOROUGH OF NORTH ARLINGTON AND THE RECORDER'S COURT OF THE BOROUGH OF NORTH ARLINGTON, RESPONDENTS.

Argued May 8, 1946—Decided August 27, 1946.

Before Justices BODINE, PERSKIE and WACHENFELD.

For the prosecutors, *Abraham Alboum.*

For the respondents, *Bruck & Bigel* (*Milton Bruck,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. The basic question for decision is whether prosecutors conducted their business at three separate locations and thus each required a separate license, as charged by the municipality, or whether as claimed for prosecutors, that the three locations are part of all the premises used by them in their business as one unit and thus subject to but one license.

Prosecutors are dealers in second hand motor vehicles and parts of such second hand motor vehicles. They operate from locations on each side of River Road, in the Borough of North Arlington, New Jersey. For a clearer understanding of the posed question requiring decision, a brief description of the premises occupied and used by the prosecutors would be helpful. The last revision (1929) of the tax map of the borough

and a drawing showing the location of the premises actually occupied by the prosecutors disclose that they occupy the following premises abutting the east side of River Road: (1) lots 5 to 10, in Block 120 L, (2) lots 6 to 8, in Block 129 N, (3) lots 4 to 10, in Block 129 R. Prosecutors also use and occupy the following premises abutting the west side of River Road, (4) part of Block 130 A (directly opposite Block 129 R), and (5) Block 130 A. With the exception of the lots in Block 129 N (used for offices) and the lot 130 A (used solely for the sale of second hand motor vehicles) the remaining lots are separately occupied by prosecutors for the dismantling, storing and sale of parts of second hand motor vehicles.

Prosecutors conducted their business under one license (No. 15A) covering Block 130 A, which had been issued to them for the sale of second hand motor vehicles under ordinance No. 591 of the Borough. Conceiving that this license applied only to the use of the premises described as Block 130 A, respondent instituted proceedings against the prosecutors charging them, on each of three complaints, with illegally conducting their business of storing, dismantling and selling used parts of second hand motor vehicles on each of the three locations embraced under the aforestated descriptions 1, 3 and 4. The theory of the borough was, and is, that each complaint related to a separate location at which prosecutors conducted their business and for which a separate license was required under sections 1 and 2 of ordinance No. 590 of the borough. Prosecutors' theory, as indicated, was, and is, that their license, under ordinance No. 591, was all inclusive covering the right to deal in second hand motor vehicles and parts thereof at all of the stated locations which together with the remaining premises constituted the one *situs* of their business. Prosecutors were adjudged guilty as charged and were fined $50 on each of the three convictions. They were allowed a writ of *certiorari* to review the judgments of conviction. This is case No. 253. They were also allowed a rule to show cause why a writ of *mandamus* should not issue commanding respondents to change its license (No. 15A) so that it would cover not only Block 130 A but also cover

the three locations for which they were convicted for operating without a license. This is case No. 254. By stipulation the two cases were consolidated and substantively submitted on the record in No. 253.

*As to case No. 253.* We think that prosecutors' convictions were improper. Respondent—the governing body of the borough—has the unquestioned power to make, amend, repeal and enforce ordinances to "license and regulate" among other things, "* * * dealers in second hand motor vehicles *and parts thereof"* (italics supplied). *R. S.* 40:52–1.e. It has the power to regulate and exact a tax from such dealers. The power to license and regulate may be exercised jointly or "unitedly" in one ordinance. *Lynch* v. *Long Branch,* 111 *N. J. L.* 148, 150; 167 *Atl. Rep.* 664.

What did the legislature mean by the phrase "dealers in second hand motor vehicles and parts thereof?" Did it mean that the governing body of the borough could, as it did, exact one license from one dealing in second hand motor vehicles and another for dealing in used parts of second hand motor vehicles? Or did the legislature mean that one license should comprehend dealing in both second hand motor vehicles and parts of second hand motor vehicles? A study of the entire section (*R. S.* 40:52–1.e) impels the conclusion that the legislature intended that one license should embrace the right of the licensee to engage in dealing in both second hand motor vehicles and parts thereof. The pattern of the statute is simple and clear. Each business authorized to be licensed is treated separately from each other business specifically enumerated. The business of dealing in second hand motor vehicles and parts thereof follow the stated pattern. The legislature, in our opinion authorized the exaction of but one license for both. It used the word "and" in the aforestated phrase, conjunctively and not disjunctively.

Respondent took a contrary view. It construed the entire phrase as giving it the right to exact a license for dealers in second hand motor vehicles and another license for used parts thereof. Accordingly, it passed two ordinances (Nos. 590 and 591) on November 7th, 1945. By ordinance No. 590 it undertook, broadly stated, to license and regulate, *inter alia,*

·dealers in parts of second hand motor vehicles. By ordinance No. 591 it undertook, generally stated, to license and regulate the business of dealing only in second hand motor vehicles.

To the extent therefore that it attempted separately to license and regulate dealers in parts of second hand motor vehicles (Ordinance No. 590), respondent clearly acted in excess of its power. The three convictions must therefore be and they are set aside.

*As to case No. 254.* Following the issuance of the license (No. 15A) to prosecutors, under ordinance No. 591, counsel for prosecutors wrote to respondent stating, in substance, that through inadvertence prosecutors' application, dated January 4th, 1946, did not contain the corrected and complete descriptions of their property. A corrected application was inclosed. By this application, prosecutors sought to cover not only Block 130 A, for which they had a license, but also for the three locations involved in case No. 253. No additional fees were offered. Respondent denied the application.

We think that prosecutors have failed clearly to establish their asserted right, factually or legally. *Jones* v. *Orlando,* 119 *N. J. L.* 227; 195 *Atl. Rep.* 717; *Eastern Boulevard Corp.* v. *West New York,* 124 *N. J. L.* 345, 347; 11 *Atl. Rep.* (*2d*) 832. There is a sharp factual and a legal issue as to whether prosecutors operated from one single *situs.* *Cf. Lynch* v. *Long Branch, supra* (at *p.* 150). Additionally, River Road divides the east and west locations in or at which prosecutors conduct their business; each location abutting the east side of River Road consists only of a few of the many lots which make up the block in which the lots in issue are situate; and the blocks on the east side of River Road (running north to south) abut not only River Road but also Eagle Street, Stover Avenue, Bayliss Avenue and Crystal Street. Thus it is clear that all of the premises utilized by prosecutors on the east side of River Road are neither adjacent nor contiguous to each other; and if those premises were properly to be described by metes and bounds, they could not have one continuous and uninterrupted boundary line as required under ordinance No. 591 part of ·which reads as follows:

"For the purpose of this ordinance a separate and distinct location shall mean any open air plot of ground, yard or parcel of land consisting of part of one, or one or more lots as set forth on the Tax Map of the Borough of North Arlington and which part of lot or lots are adjacent and contiguous to each other and if described by metes and bounds would have one continuous and uninterrupted boundary line."

The principle that the title and legal possession of one who owns and is in possession of a plot of land abutting a public street extended to the middle of the street, the freehold being in such owner subject to the public easement (*Faulks* v. *Allenhurst*, 115 *N. J. L.* 456, 461; 180 *Atl. Rep.* 877) is beside the point. It begs the question. An owner may, as prosecutors, own premises abutting streets and conduct and use parts of those premises as separate units in or at which his business is conducted or carried on. In such circumstances, the municipality may regulate and require a license, as a source of revenue, for each separate place. Cf. chapter 52 (Licenses) of *R. S.* 40:52–1, *et seq.*, as amended by *Pamph. L.* 1941, ch. 92, § 1; *Pamph. L.* 1944, *ch.* 245, *p.* 807, § 1.

The rule to show cause is dismissed. Each party being partly successful, neither is awarded costs. *Moore* v. *Splitdorf Electric Co.*, 114 *N. J. Eq.* 358; 168 *Atl. Rep.* 741.