35 N.J. Super. 203 (1955)
113 A.2d 831
NEW JERSEY HIGHWAY AUTHORITY, PLAINTIFF-RESPONDENT,
v.
WALTER JOHNSON, JR., AND BARBARA JOHNSON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 1955.
Decided April 26, 1955.
*206 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Samuel Allcorn, Jr., argued the cause for appellants (Messrs. Goodell & Allcorn, attorneys).
Mr. Morris M. Schnitzer argued the cause for respondent.
The opinion of the court was delivered by JAYNE, J.A.D.
The plaintiff, a body corporate and politic of this State, determined that the acquisition of certain lands of the defendants situate in the Town of Bloomfield, in the County of Essex, were reasonably necessary for the construction of the Garden State Parkway. In the pursuit of its authorized governmental functions it was obliged in the absence of mutual agreement to acquire the defendants' lands by the exercise of its power of eminent domain and it instituted the present action to effectuate that purpose.
The condemnation commissioners awarded the defendants the sum of $77,000 as compensation, which the plaintiff deemed to be exorbitant and from which determination the *207 plaintiff appealed. On appeal the trial jury fixed the sum of $57,000 as just compensation to the defendants for their deprivation. The latter award has aggrieved the defendants, and they present to us five argumentative reasons why the judgment should be reversed and a new trial ordered.
Counsel for the appellants propose that the trial judge committed prejudicial error in embodying in his instructions to the jury the following request to charge submitted to him on behalf of the plaintiff.
"5. The property being condemned in these proceedings comprises 7.86 acres and this has been agreed upon between the parties. The tract originally contained 10.16 acres and the difference between these two figures is accounted for by the filing of a map by the owner with the municipality and the delineation of streets thereon. That I charge."
To ascertain definitely the land sought to be procured by the plaintiff we initially consult the descriptive information necessarily supplied by the complaint. There we discover that the property is identified as parcels 4A, 4B, and 4C as indicated on an attached plan entitled "New Jersey Highway Authority, Garden State Parkway, Section 2, From Main St., Paterson, Passaic County, to Belleville Ave., Bloomfield, Essex County, Parcels 4A, 4B & 4C, Town of Bloomfield, Essex County, Scales as indicated, May 1953."
In further particularization, parcel 4A is stated to represent lots Nos. 90 to 106, inclusive, as so designated on a map entitled "Map of Povershon Hills, Property of Walter Johnson, Situated in the Town of Bloomfield, N.J.," containing 126,267 square feet; parcel 4B, lots known on the Povershon Hills map as Nos. 55 to 78 inclusive (excepting No. 63), embracing 157,066 square feet; and parcel 4C, lots Nos. 79 to 88 inclusive likewise exhibited on the same map, containing 58,666 square feet; together with all right, title and interest that Walter Johnson, Jr., the defendant, may have in and to Newport Drive, Byrd Avenue, Pilch Street, and the former Morris Canal adjoining the premises so described.
It is significant to observe that informationally the same description numerically indicating the lots and specifically *208 designating the streets as shown on the Povershon map was attached as "Schedule A" to the pretrial order to which counsel for the respective parties subscribed. Certainly the court, the jury and counsel were definitely aware of the lands subjected to condemnation.
The jurors availed themselves of the opportunity personally to view the property and visualize its natural characteristics, the better to enable them to understand the testimony. Everyone understood that as delineated on both maps there were in all 52 lots of an aggregate area of 7.85 acres, and that of the total acreage of 10.16 an area in all of 2.31 acres was within the boundaries of the platted streets denominated as Byrd Avenue and Newport Drive.
With equal assurance derived from our examination of the testimony adduced at the trial, it can be stated that all concerned understood the lineations of the entire tract, the dimensions of the delineated lots, their frontage on the platted streets, the incomplete and partial improvement of the designated streets and the general nature and extent of the improvements already installed therein. Every witness appears to have shared the belief that the most valuable use to which the lands could in the immediate present or in reasonable anticipation in the future be adapted was for the erection thereon of one-family residences.
It is noticeable also that the trial judge instructed the jurors that they were privileged to take into consideration the improvements on the land as components of its value on the stated date.
And so, in the respects thus far discussed we fail to detect any cause for confusion in the minds of the jury prejudicial to the appellants.
But we must recognize the core of the appellants' first point, which is that the portion of the court's charge here impugned in effect directed the jury to determine the value of only 7.85 acres instead of a tract of land of 10.16 acres, thus erroneously depriving the defendants of the opportunity to have the jury consider and determine the amount of compensation, if any, to which the defendant owner was entitled *209 for his right, title and interest in the 2.31 acres, which areas are portrayed as streets on the Highway Authority and Johnson maps.
One wonders whether a visionary conception of 52 relatively spacious lots, all having a street frontage, would not conduce to a more elevated estimate of value than a realistic perception of a tract of vacant and unimproved acreage. It would seem that the maps placed an attractive dress on the naked land.
It is observed that the plaintiff additionally sought the acquisition of all the right, title, and interest, "a fee simple absolute," of the defendant Walter Johnson, Jr., in the areas comprising the 2.31 acres designated on the maps as Newport Drive and Byrd Avenue.
True, it has been heretofore held that where the State took land for highway purposes, it acquired an easement for public travel only. New Jersey Zinc & Iron Co. v. Morris Canal & Banking Co., 44 N.J. Eq. 398, 404 (Ch. 1888), affirmed 47 N.J. Eq. 598 (E. & A. 1890); Frelinghuysen v. State Highway Comm., 107 N.J.L. 218 (Sup. Ct. 1930), affirmed 108 N.J.L. 403 (E. & A. 1931); Wolf v. State Highway Comm. of N.J., 110 N.J.L. 237 (E. & A. 1933); Lindel Realty Co. v. Miller, 2 N.J. Super. 204, 211 (Ch. 1948), affirmed 4 N.J. Super. 37 (App. Div. 1949); Valentine v. Lamont, 13 N.J. 569, 577 (1953), certiorari denied 347 U.S. 966, 74 S.Ct. 776, 98 L.Ed. 1108 (1954).
Accordingly the land of the abutting owner was merely encumbered by the easement of public travel and the essential incidents of such a use, but the fee to the land to the middle of the road remained in the abutting owner. Saco v. Hall, 1 N.J. 377, 382 (1949); Faulks v. Borough of Allenhurst, 115 N.J.L. 456 (E. & A. 1935). See, also, Starego v. Soboloski, 21 N.J. Super. 389 (App. Div. 1952), affirmed 11 N.J. 29 (1952), certiorari denied 345 U.S. 925, 73 S.Ct. 784, 97 L.Ed. 1356 (1952); Stanley Development Co. v. Millburn Tp., 26 N.J. Super. 328 (App. Div. 1953); Wolff v. Veterans of Foreign Wars, Post 4715, 5 N.J. 143, 151 (1950).
*210 Here it is conceded that the plaintiff possessed the power to acquire the fee absolute of the 2.31 acres and also that such was the object of the present condemnation proceeding. Art. IV, Sec. VI, par. 3, Constitution (1947); N.J.S.A. 27:12B-5(l); vide, Valentine v. Lamont, supra. "Such taking shall be with just compensation," says the Constitution.
In this essential particular it becomes consequential to reflect upon the probable import ascribed by the jury to the court's instruction. Noticeably requests Nos. 4 and 5 were charged in immediate sequence. In number 4 we observe the following unobjectionable excerpt:
"* * * the jury may not consider what the value would be if the property were laid out in lots, estimating the costs of putting upon it the improvements of the municipality, and calculating what the value would be if such improvements were actually made."
Then comes:
"The property being condemned in these proceedings comprises 7.86 acres and this has been agreed upon between the parties."
It is rational to believe that the associated ideas generated by the charge would cause the jurors to understand that they were not to evaluate the property as consisting of lots abutting public streets but only as a tract of 7.86 acres remaining from a former tract of 10.16 acres, from which the area designated as streets had been previously dedicated to the public by the owner by reason of the filing of the map.
Moreover, while the defendants acknowledged that the total area of the platted streets was 2.31 acres and the remaining area comprised a total of 7.85 acres, we are unable to discern in the record any agreement by the defendants that the only property being condemned was 7.86 acres. Incidentally, we may state that no significance is attributable to the circumstance that the judge mistakenly mentioned 7.86 instead of 7.85 acres. That occurrence is miniscule.
And then the fact is not to be ignored that the requests which describe the property to be taken as acreage were submitted at the trial on behalf of the Authority and that *211 counsel on this appeal prefers to assert that: "In the court below, the sole issue which the parties tried was the value of 52 building lots fronting two mapped streets, partially improved by the owner."
Counsel's assertion appears to be true. The learned and experienced trial judge seems to have entertained the same impression. Yet other than in the instances already indicated, no mention whatever of lots and streets was made in the charge. Counsel for the defendants recorded his objection: "I take exception to the charging of request No. 5 because it may give the impression that there is only 7.86 acres of land whereas in fact there are 10.16 acres." The objection appears to have been adequately suggestive of the incompleteness of the instruction.
In its signification the instruction expressly confined the determination of the jury to the appraisal of the fair value of only 7.86 acres of vacant land and not of 52 lots, and excluded the value, if any, of the interest and title of the owner in the so-called "paper streets."
The implication reasonably to be derived by the jury from the instruction was that the area of 2.31 acres had been dedicated by the owner to the public use.
True, the owner's map had been duly approved by the appropriate municipal authorities and filed in the office of the County Register. N.J.S.A. 40:55-1.17 et seq. However, the streets thereon designated and delineated had not been officially accepted, hence the public had neither acquired rights in such proposed streets nor assumed any obligations with respect thereto. N.J.S.A. 46:23-8, now 46:23-9.5.
A distinction is perceptible between an offer to dedicate and a complete dedication. It was long ago held that where the owner of urban property has laid it off in lots, with streets, avenues, and alleys intersecting it, and conveys the lots with reference to the map, his acts will be deemed to constitute a dedication of the streets, avenues, and alleys to the public. Clark v. City of Elizabeth, 40 N.J.L. 172, 174 (E. & A. 1878); Dodge & Bliss Co. v. Mayor and Aldermen of Jersey City, 105 N.J. Eq. 545, 550 (E. & A. 1930). Here there *212 was no proof that the owner had sold any lot with specific reference to the filed map.
Before there was any legislative enactment relative to the filing of such maps the owner of lands might lay them out into blocks and streets at his own free will and the public would not acquire any interest therein until by some decisive and irrevocable act, either toward the public or toward a grantee, it became improper and unjust to permit him to deny the public use and character of the highways. Vanatta v. Jones, 42 N.J.L. 561 (Sup. Ct. 1880); Currie v. Jersey City, 95 N.J. Eq. 412 (Ch. 1924), affirmed 98 N.J. Eq. 689 (E. & A. 1925).
Here legislation existed regulating the approval and filing of such a map, and under recent legislation considerable formality attends the preparation, the requisite approvals and the permissible filing of such maps and ground plans. The deliberate and successful pursuit of such formalities by the owner of land does carry, we think, the manifest implication of an offer to dedicate for the public use those delineated areas which are definitely designated on the map or plan as streets.
The offer, however, is to dedicate the use of the areas as and for streets. The consideration motivating the owner's offer is the more advantageous marketability of his abutting properties. The offer is circumscribed by the measurements of its purpose, namely, the eventual establishment of streets. Had the defendants' proposed lots or lands abutted established public streets, the prevailing practice and policy in these eminent domain cases might well have reduced the compensation of the owner for his fee in the streets burdened by the public easement to a merely nominal sum. Clark v. City of Elizabeth, supra; Tweddell v. Village of South Orange, 95 N.J.L. 327 (Sup. Ct. 1921); St. Louis v. Clegg, 289 Mo. 321, 233 S.W. 1, 17 A.L.R. 1249.
In the present case the offer to dedicate had not been officially accepted. The proposed streets were only partially improved. The state agency has no intention of accepting the defendants' offer of dedication but to the contrary sought *213 the unencumbered fee simple title to the lands which were merely laid out as streets on the maps. In these respects the present case is somewhat exceptional.
Although we appreciate that all of the relevant and pertinent characteristics and characterizations of the property were disclosed to the jury by the evidence, we conclude that the court's instruction given pursuant to the plaintiff's request No. 5 was in the absence of elucidation erroneously prejudicial.
Since this case is to be tried anew, we deem it prudent to furnish the trial judge with guidance relative to the remaining objections urged on this appeal.
A. The appellants widen their remonstrance by disclosing that not only were they in effect deprived of any compensation whatever for the "paper streets" but were prohibited at the trial from introducing evidence from which the jury could estimate the value of the sewer mains and accessories actually installed therein prior to the date of the taking. The proof tendered on behalf of the defendants pertaining to that feature of the case concerned the reproduction cost of the sewer installation.
It would be lavish here to indulge in a redundant discussion of the rule in our jurisdiction governing the admissibility in condemnation proceedings of evidence of the reproduction costs of improvements erected on or installed in the subject lands. In plain view is the relatively recent decision of former Senior Judge Eastwood rendered for this Division in In re Parking Authority of Hackensack, 30 N.J. Super. 534 (App. Div. 1954), in which the precedential decisions in our own jurisdiction are canvassed. We do not discover in the present action any cogent or exceptional reason either to emasculate so pragmatical a rule or to deny its application to the ruling here reviewed. Certainly the existence and nature of improvements may be revealed and their influence on the fair value of the property considered by the jury, and also by expert witnesses.
We are aware of the conditional divergency of opinion on the subject elsewhere. Vide, 172 A.L.R. 238, 244; 2 Orgel, *214 Valuation under Eminent Domain (2d ed. 1953), § 190, p. 9; 4 Nichols, Eminent Domain (1951), § 12.313, p. 87; Dolan, Court Practice in Condemnation Suits, 31 Va. L. Rev. 9, 23 (1944).
This is not a case in which the record is devoid of proof of sales of comparable property designed to establish the market value of the lands here taken. In the discretionary rulings in these cases, care should be exercised to apply the limitations indiscriminately in the reception of the evidence of both parties.
B. The testimony concerning a comparable sale in West Caldwell which the judge admitted, is challenged as too remote, "not being in the neighborhood" of the lands here involved. It is well established by the decisional law in this State that the trial judge possesses a "wide discretion" in deciding "`whether the conditions are such as readily to admit of reasonable comparison between the land taken and the lands so sold.'" In re Port of New York Authority, 28 N.J. Super. 575, 581 (App. Div. 1953), and cases there cited. We perceive no prejudicial error in this ruling. Nor has it escaped our attention that this sale was among those listed as comparable by the plaintiff in its notice to the defendants, in pursuance of the terms of the pretrial order, though subject to objection at the trial.
C. The amended pretrial order recited, in part, that "proof of comparable sales will be limited to transactions within three years of August 11, 1953, the date of the filing of the complaint in this proceeding." Patently, in obedience thereto, the court excluded a sale of the Owens property in Bloomfield which was evidenced by a deed dated August 12, 1953, or one day after the filing of the complaint, and this despite the fact that plaintiff included the sale on its list of comparable sales. While the failure of the defendant to make an offer of proof as contemplated by R.R. 4:44-3 leaves us in a position where we cannot assert that the ruling was a prejudicial one, it is our opinion that in the circumstances the pretrial order did not foreclose the inquiry which, if at all, was barely outside the terminal point. Moreover it *215 is not inconceivable that a contract of sale preceded the date of the deed, which would bring it within the ambit of the limitation. Cf. Handelman v. Handelman, 17 N.J. 1 (1954).
D. Another ruling on evidence is impugned. An expert witness for the plaintiff was asked on cross-examination whether he had not made a contradictory statement in his testimony before the condemnation commissioners. The objection by plaintiff was sustained on the broad ground apparently that anything that happened before the commissioners should be kept from the jury. We think the ruling to be in error. The trial judge had it within his power to confine this line of questioning to its obvious purpose of impeachment, and yet afford the protection to which the parties were entitled. Here again, we find no offer of proof. This requirement is basic under R.R. 4:44-3.
The judgment is reversed and remanded for a new trial.